HOWARD v. QUATTLEBAUM, ADM'R.

1. WILL—EVIDENCE.—The record of a certified copy of a will is the highest evidence thereof, when the original and the original record have been destroyed, and the executor having had this certified copy placed on record—he afterwards making returns in the probate office as such executor, and the book in which the certified copy is recorded being generally accepted as containing the best evidence of wills destroyed by the fire of 1865.

2. EXCEPTION.—An exception pointing out no specific error is too general for consideration.

3. EVIDENCE—WILLS.—The testimony in this case, to establish the contents of a lost will and decree, was competent, because the best evidence thereof attainable.

4. ACCOUNTING—STATUTE OF LIMITATIONS.—A trustee is liable to the remaindermen for the *corpus* of a life interest in his hands, and for the interest thereon, and the statute of limitations is not applicable to an action therefor, unless there is a declared defiance of the rights of the *cestui que trust* brought to their knowledge—approving *Nobles* v. *Hogg*, 36 S. C., 322.

Before TOWNSEND, J., Lexington, June, 1895.

Action by Samuel Howard and Sarah T. Able against C. P. Quattlebaum, as administrator of estate of Paul Quattlebaum, for an accounting by Paul Quattlebaum, as the trustee of the mother of plaintiffs, commenced April 24, 1894. Judgment for plaintiffs. Defendant appeals.

*Messrs. Meetze & Muller* and *Johnson & Quattlebaum,* for appellants.

*Messrs. Shephard Bros.,* contra.

March 11, 1896. The opinion of the court was delivered by

MR. JUSTICE GARY. The statement of the facts in this case fully appears from the decree of his honor, Judge Townsend, which is as follows: This cause came up for hearing at the June term of court for the year 1895, and the hearing was continued and concluded in Columbia on the 27th day of the present month. All the testimony was taken by H. A. Spann, to whom the case was referred for the purpose of taking testimony.

The complaint alleges that John Quattlebaum, late of the county and State above mentioned, departed this life during the year 1853, leaving of force his last will and testament, which was duly admitted to probate in the manner and according to the form prescribed by law; that his son, Paul Quattlebaum, the defendant's intestate, was appointed the executor of said will, and that he duly qualified thereof; that in and by the second clause of his said will the said John Quattlebaum, after disposing of eight-ninths of his estate, made the following directions as to the remaining ninth part thereof, to wit: "And the other ninth part thereof I give to my executor in trust for the sole and separate use of my daughter, Mary Howard, and her children, as follows, that is to say: that my executor shall pay to my said daughter, annually, during life, upon her own receipt—which shall be a sufficient voucher—the interest on said income on her said share; and if that be not sufficient for the decent support of herself and children, then such portion of the capital of such share as my executor shall, in his discretion, deem necessary and proper; and at her death it is my will that whatever may remain of her share shall be equally divided between such children as she may leave surviving her, the child or children of any deceased child of my said daughter taking among them the share of their parent."

And that the said Paul Quattlebaum heretofore departed this life, during the month of October, 1890, intestate, being a resident of the county and State aforesaid. That

letters of administration upon his estate have been duly
granted to the defendant, C. P. Quattlebaum; that the said
Mary Howard departed this life in 1893, leaving surviving
her her children, the plaintiffs above named; and that they
are entitled to the full share of Mary Howard, under the
will of John Quattlebaum.    The defendant admits .the
death of John Quattlebaum; he admits the death of Paul
Quattlebaum, and his appointment as administrator; he
admits the death of Mary Howard, and admits that the
plaintiffs are her surviving children.

For a defence to the cause of action set up in the com-
plaint the defendant says, that while he has heard that he
left a will and testament, he has no knowledge sufficient to
form a belief; therefore, denies the same, and demands strict
proof of the same; he further alleges that if the plaintiffs
have any claim against the defendant's intestate, the same
occurred more than six years before the commencement of
this action, and, therefore, presents the plea of *plene ad-
ministravit.*

Upon the reading of the testimony reported by the ref-
eree, the plaintiff, having given due notice thereof, moved
to amend the complaint by striking out paragraph five
thereof, and inserting in lieu thereof the following as par-
agraph five, to wit: "(5) That after the death of the said
John Quattlebaum, it was ascertained that the share of said
Mary Howard in his estate amounted to the sum of $2,374.23,
which said sum the said Paul Quattlebaum retained in his
hands as trustee of and for the said Mary Howard, as di-
rected in and by the said second clause of the said last will
and testament." As this amendment was proper to conform
the allegations of the complaint and the testimony that
had been adduced, the motion was not resisted, and the
amendment allowed.

We will first consider whether or not the will exhibited
with the complaint was a true copy of the last will and tes-
tament of John Quattlebaum, deceased.

It is undeniable that John Quattlebaum left a will. Paul

7—46

Quattlebaum was recognized as the executor of John Quattlebaum's estate, and was so dealt with by the community. In 1867 he made a final return, and signed his name as executor of the estate of John Quattlebaum; for several years he made returns for taxation as trustee for Mary Howard; numerous receipts are proved in testimony to have been given by Mary Howard to Paul Quattlebaum, as executor and trustee under the will of John Quattlebaum; and the defendant, when upon the stand, stated, "I have no doubt about it that my father was the executor of John Quattlebaum's estate. I have no doubt about it, but have no certain knowledge of it, if it is a proper question. I have no doubt about it that my father was trustee for Mary Howard, if that is a proper question."

From the records and testimony here, I cannot entertain a doubt that Paul Quattlebaum was executor of his father's will, and that he accepted the trust thereby imposed upon him in favor of his sister, Mary Howard. I have as little doubt, and do not hesitate to find as a fact, that the will exhibited with the complaint herein is a true and correct copy of the will of John Quattlebaum. The original will and the original record book in which it was recorded, were destroyed by Sherman's raid; thereafter Paul Quattlebaum carried to the ordinary a certified copy of the original will, which had been given him by the ordinary, when the will was admitted to probate. This certified copy was entered in what is now called will book A, and certified by A. Efird, then ordinary, as a true and correct copy. Will book A has been accepted by the bar and the citizens of the county as containing the best attainable evidence of the records that were destroyed by said raid.

Paul Quattlebaum, the executor, lived in the county of Lexington from the time that the will was recorded in will book A to the time of his death in 1890; during which time he made return to the ordinary, and made the settlement as executor, according to the provisions of the said will, as appearing in will book A; and hence I do not doubt that he

was fully aware that his father's will had been entered in will book A; that he was fully aware of the provisions of the will as appeared in will book A, and that it came within his knowledge that the will as appearing in will book A was correct.    In short, the testimony is abundant and over-whelming, that will book A contains the true copy of the will of John Quattlebaum.    The question then arises, how much is due the plaintiffs under the will of John Quattle-baum?    It appears that in 1858, a settlement was made by the ordinary, between Paul Quattlebaum, executor, and Mary Howard, to ascertain the amount of the share of Mary Howard in the estate of John Quattlebaum.    That a settle-ment then made resulted in a decree, in which it was ascer-tained that the share of Mary Howard amounted to the sum of $2,374.23, for which sum a decree was then rendered. That decree was also destroyed by Sherman's raid.

On the day that the decree was written, Fort, the ordi-nary, gave to Howard, the husband of the life tenant, a certified copy of the said decree. , After the war, and after the destruction of the records by Sherman, Howard carried said certified copy to A. Efird, then ordinary, to be entered of record, in lieu of the original, destroyed as aforesaid. Efird entered said decree in will book A, and certified that the decree so entered was a true copy.    The original certi-fied copy by Fort was delivered to A. J. Norris, Esq., for the purpose of instituting proceedings against the trustee. A. J. Norris testifies that he lost the same.    From which testimony I do not hesitate to conclude that the decree, as appearing in will book A, is a correct copy of the decree that was written in 1858 upon said accounting, and I so find.    By this decree, as above stated, it appears that the corpus of the share of Mary Howard in the estate of John Quattlebaum was $2,374.23; for in the decree by Fort, or-dinary, in 1858, it appears that up to that time the trustee was only in arrears on account of interest in the sum of $25.38, which shows that, up to the date of the decree, he had not paid all of the interest due on the corpus by the

sum of $25.38. The fact that said sum was the original corpus is corroborated by the return of Quattlebaum, as trustee, of the said sum for taxation for many years, and by the further fact that each and every year for a number of years thereafter, he paid the identical sum in interest—the said amount each year—thereby showing that the principal remained the same up to the time that he discontinued the payment of interest.

I, therefore, find as a fact that the principal share of Mary Howard in the estate of John Quattlebaum. was $2,374.23.

It appears that Paul Quattlebaum has not paid any interest to the life tenant since the year 1875; whether he paid interest for the year 1875 does not clearly appear, as the testimony is not specific as to the exact time when the payments of the interest were discontinued, I shall give the estate the benefit of the doubt, and will allow the plaintiffs interest on the said principal sum from the first day of January, 1876.

The plea of the statute of limitations can have no application to the issue presented here; that question is fully and specifically met by the case of *Nobles v. Hogg*, 36 S. C., page 322. I deem it unnecessary to discuss the question of the statute of limitations, as the facts disclosed by the testimony and the records offered make it clear under the principles settled in *Nobles v. Hogg*, that the plea of the statute is without avail, and it is, therefore, overruled.

The plea of *plene administravit* is allowed. It is, therefore, ordered, adjudged, and decreed, that the plaintiffs have judgment against the defendant, as administrator of the estate of Paul Quattlebaum, deceased, for the sum of $2,374.23, with interest from the first day of January, 1876, the interest amounting on the first day of July, 1895, to the sum of $3,246.69; said principal and interest amounting to $5,614.92; and that they are entitled to interest on said sum of $5,614.92 from the first day of July, 1895.

It is further ordered, that the plaintiffs have judgment

for the costs of this proceeding, to be taxed by the clerk of this court.

It is further ordered, that the plaintiffs have leave to sue out execution to enforce the payment of said sum out of any property which may hereafter come into the hands of C. P. Quattlebaum, or out of any property which belongs to the said Paul Quattlebaum, and that now may be liable to said judgment.

From this decree the appellants appealed to this court upon the following exceptions:

"1. Because his honor erred in finding and ruling as he did in his said decree, wherein he says: 'I have as little doubt, and do not hesitate to find as a fact, that the will exhibited with the complaint herein is a trne and correct copy of the will of John Quattlebaum;' whereas, it is respectfully submitted that there is no proof in the case which warrants said findings.

"2. Because all the evidence to prove the will and submitted by the plaintiffs consists in the statements of Dr. J. K. Kneece, William Howard, and the will book A from the judge of probate's office—all of which was incompetent and inadmissible, and his honor erred in not ruling out the same.

"3. Because, if the original will book of the judge of probate's office had been in existence, even that book could not have been given and received in evidence, much less this one, which has been procured for this office since the destruction of the former, and which is said to contain a copy of the supposed will of John Quattlebaum, and his honor erred in not ruling out said book.

"4. Because, if said book A should be admitted as properly in evidence, containing a copy of a copy of the supposed will of John Quattlebaum, then it is submitted that it is fatally defective in this, that it bears evidence on its face that it is not under the seal of the court from which it purports to emanate, and his honor erred in not so holding and ruling.

"5. If book A is to be admitted as properly in evidence

(which we submit cannot be done, for that part purporting to be the codicil is wanting in every legal essential to its validity, in that it is without witnesses, and signed John Quattlebaum, his mark, and the codicil provides for an accounting by three of his sons for advancements made to them), the plaintiffs must be bound by it, for they offered that book as containing the supposed will of John Quattlebaum in its entirety, and his honor erred in not so holding and ruling.

"6. If the court should hold the first paper to be the will of John Quattlebaum, it can not so hold as to the codicil; and the codicil being out, the rule of advancements does not apply, and in the settlement of the estate of the testator these must be deducted; which was not done in this case, as the proof shows, and his honor erred in not so ruling and finding.

"7. That his honor erred, also, in not excluding said will book A, which was offered for the purpose of fixing the amount of the estate of Mary Howard due her by Paul Quattlebaum, as by a supposed decree by A. H. Fort, ordinary of Lexington District, and recorded therein. If even the book required by law to be kept by the judge of probate for purposes of this kind had contained this supposed copy, that book, we submit, could not be offered in evidence—certainly not this one. And it is subject to the further objection, that it is wanting in an essential particular, to wit: not under seal of the court.

"8. That his honor erred in finding that the corpus of the estate in the hands of Paul Quattlebaum, and due Mary Howard, was $2,374.23.

"9. If even the will should have been proven, then we submit that the court erred in allowing interest on anything more than the corpus of the estate, whatever that might be, in the hands of Paul Quattlebaum, certainly not beyond the death of the life tenant, to wit: February, 1893.

"10. If the will should have been proven, we further submit that the court erred in allowing interest on anything

more than the corpus of the estate, whatever that might be, beyond the date of the filing of the bill, or, at most, six years prior thereto."

We come now to the consideration of appellant's exceptions. After carefully considering the testimony in this case, we are satisfied that the facts relied npon by the Circuit Judge fully sustain his finding as to the will of John Quattlebaum, and, therefore, the first exception must be overruled.

The second exception points out no specific errors, and is too general for consideration.

The third, fourth, and seventh exceptions will be considered together. The testimony was competent, because it was the best evidence of the will and the decree therein mentioned. *Hobbs* v. *Beard*, 21 S. E. R., 305.

We will next consider exceptions five and six. The amount due Mary Howard from the estate of her father, John Howard, was ascertained years ago, and we do not see what relevancy the questions have which are raised in these exceptions.

We will next consider the eighth exception. This court is satisfied that the facts relied upon by the Circuit Judge also fully sustain his finding as to the corpus of the estate of John Quattlebaum, due Mary Howard.

Exceptions nine and ten will be considered together. We are satisfied that the Circuit Judge was correct as to the manner in which he decreed interest against the defendant, and these exceptions are also overruled.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.