ROBERT v. ELLIS.

1. STATUTE OF LIMITATIONS do not begin to run against remaindermen until death of life tenant.

2. PLEADINGS—PURCHASER FOR VALUE.—Necessary allegations to sustain plea of purchaser for value without notice stated.

3. IBID.—IBID.—AMENDMENT OF COMPLAINT so as to set up defense of purchaser for value without notice disallowed in this Court, because (1) no such motion was made below; (2) entirely distinct and independent defense; (3) no facts proven to support it.

4. WILLS—LIMITATION OF STATUTES—COURT OF APPEALS—COURT OF
ERRORS.—All of a will and the sense in which words are used must
be considered in construing one portion of it, and this will so con-
strued gives the primary devisee a life estate in the land in question,
with remainder to his children. The difference between the former
Court of Appeals and Court of Errors in construing wills stated.
*Addison* v. *Addison,* 9 Rich. Eq., 58, and *Simons* v. *Bryce,* 10 S. C.,
354, *distinguished from this.*

Before TOWNSEND, J., Hampton, January, 1900. Af-
firmed.

Action for possession of real estate by Pierre Robert,
Jeanie May Jones, and John H. Robert against L. D. Ellis.
The agreed statement of facts upon which the case was heard
is as follows:

"That John H. Robert died on the        day of May, 1897,
leaving as his sole surviving children and heirs of his body
the plaintiffs, Pierre Robert, Jeanie May Jones and John
H. Robert.    That the tract of land sought to be recovered in
this action, and which is now in the possession of and with-
held by defendant, was formerly the property of John H.
Robert, the grand-father of the plaintiffs, and at his death
passed into the possession of John H. Robert, the father of
plaintiffs, under and by virtue of the last will and testament
of his father, the said John H. Robert, as per copy of same
certified by Ed. F. Morrall, ordinary in and for Beaufort
District, mentioned in notice of intention to introduce the
same, served in this action.    That John H. Robert, the
father of the plaintiffs, went into possession of the land in
dispute on the        day of        , A. D. 1852, under the provi-
sions of the will of his father, John H. Robert, and claiming
to hold a fee simple title to said land by virtue of the provi-
sions of said will.    That on the 21st day of January, 1872,
for valuable consideration, the said John H. Robert executed
a mortgage of said tract of land to Brigham, Holstz & Co.,
in which was inserted a covenant of general warranty, and
which was duly recorded, according to law, in the office of
the register of mesne conveyance of Beaufort County.

That afterwards, in an action brought in the Court of Common Pleas in said county of Beaufort, upon said mortgage, a judgment of foreclosure and sale was duly rendered thereon, and in pursuance of said judgment, the said land was duly advertised and sold at public auction by the sheriff of Beaufort County, on the 5th day of December, 1876, and the usual sheriff's title was duly executed on the same day by the said sheriff to the purchasers, Brigham, Holstz & Co., which title was on the 6th of December, 1876, duly recorded in the office of register of mesne conveyance of said county of Beaufort, and the said purchasers went into possession thereunder. That on the 16th day of December, 1880, the said purchasers, for valuable consideration, duly executed a deed of said land to the defendant in this action, which said deed was duly recorded in the office of register of mesne conveyance of Hampton County, on the 28th day of June, 1883, and said defendant has held possession of said land from the time of execution of said deed. That all the records of the Court of Common Pleas and of the court of ordinary of Beaufort District were destroyed on 17th February, 1865. That the certified copy of the will of John H. Robert, signed by Edward F. Morrall, ordinary of Beaufort District, introduced in evidence by the plaintiffs, was recorded in the office of probate court of Beaufort County on some day, between the 26th day of July, 1873, and the day of July, 1874."

The will in question is as follows:
"I, John H. Robert, of St. Peter's Parish, Beaufort District, and State aforesaid, do make and ordain the following as my last will and testament, hereby revoking all others by me heretofore made. *Imprimis:* I commend my soul to that God from whose unbounded goodness I have received all mercies, and hope for everlasting happiness, through the merits and atonement of his Crucified Son. First. I order and direct that all my property be kept together until my just debts, legacies and funeral expenses are paid. Second. I

give and bequeath to my beloved wife, Anna M. Robert, in lieu and bar of her dower, and for the purpose of an easy and comfortable maintenance, my Pleasant Hill plantation, on which I now reside, with all my tract of land thereto adjoining, containing altogether about eighteen hundred and forty acres, more or less; also, my Blount Hill plantation, near Turkey Hill, on which I formerly resided, containing 743 acres, more or less, according to a resurvey plat of Philip Latimer, dated 26th April, 1810; also, the half of the pine-land tract, containing 500 acres, bought of F. Aiken and wife, adjoining the said Blount Hill plantation, this pine-land tract to be divided so as to be as wide as the Blount Hill tract where they adjoin, and to give the lower half of said tract to my said wife; also, thirty of my negroes, to be selected by her at her discretion, and their increase, not including Leonora and her two children, Cæsar and Charles, and her future increase, which are already secured to her; also, all my household goods, furniture, bed, bedding, bedsteads, tables, chairs, &c., including, also, house supplies, such as sugar, coffee, bacon, &c.; my library of books, kitchen furniture, all the plantation tools on the place whereon I now reside; a portion of the provisions which I may leave at my death, either in house or in fields, equal to the proportionate consumption of herself and the negroes and horses which she will inherit by virtue of this instrument, compared to that of my children and their negroes and horses; also, both of my pleasure carriages, my gig, a choice of four of my horses, one-third of my stock of cattle, all of sheep and hogs, one-horse wagon, one ox wagon, one light cart, two mules, four yoke of oxen, and fifteen hundred dollars in money, to be paid her immediately after my decease, as pocket money; any money she may have at the time of my decease to be taken and regarded as a part of the said $1,500. The said property I give to my said wife, to her and her heirs forever. Third. Having already, by deed under my hand, conveyed to my son, William H. F. Robert, my interest in the Turkey Hill plantation, and having also received his con-

veyance of his interest in the Blount Hill plantation, I regard
him as provided for in lands.    I give and bequeath to my
said son, William H. F. Robert, negroes, Jim Polar (already
delivered), Harry and his wife, Dinah, and boy, Lewis; also,
all his notes and accounts due me, and horse, Bosar.    This
property, added to that left him by his grand-father, Samuel
Maner, will put my said son, William F. H. Robert, on an
equal footing with my                it is believed in point
of property, except upon divers contingencies hereinafter
mentioned, in which case my said son, William F. H. Robert,
will share in common with my other children, which is my
wish and intention.    I give the said property to my said son,
William H. F. Robert, to him and his heirs forever.    Fourth.
I give and bequeath to my son, Lucius C. Robert, my Cotton
Hill plantation, containing 520 acres; also, a tract of pine
land near the said plantation, bought of Rev. Alex. Scott,
containing 639 acres; also, the half of two tracts of land, un-
divided, containing together 862 acres, left me by my father,
John Robert (the other half being left to Mary M. Jaudon),
said land lying in part in the Savannah, on each side of the
public road leading from Robertville to the Sisters Ferry;
the said land to be put into his possession at his arriving at
the age of twenty-one years or day of his marriage, which
first may take place.    Should my son, Lucius C. Robert,
however, die before arriving at the age of twenty-one years,
and without leaving lawful issue of his body, or should he
come in possession of my Mount Hope plantation by the
death of my son, John H. Robert, as provided for hereafter,
in either case I then give the said land hereby bequeathed to
my said son, Lucius C. Robert, to my three daughters, Cor-
nelia E. Riley, Sarah Isabella A. Robert, and Elizabeth Ann
Robert, and to the survivor or survivors, should either of
them die before that event.    Fifth.    I give and bequeath to
my son, John Hancock Robert, my Mount Hope plantation,
bought of F. Aiken, containing, by resurvey, 1,186 acres;
also, the remaining half of 500 acres of pine land bought of
said Aiken (the other half being bequeathed as above); also,

a tract of pine land, containing 120 acres, adjoining the above tract of 500 acres, bought of John T. Moss and others, the said land to be put in his possession at his arriving at the age of twenty-one years of age or day of his marriage, which first may take place.   Should my son, John Hancock Robert, however, depart this life before attaining the age of twenty-one years, without leaving lawful issue of his body, then, and in that case, I give the land hereby bequeathed to him to my son, Lucius C. Robert, in lieu of the lands bequeathed to him above in item fourth; but should both my sons, Lucius C. Robert and John Robert, die before attaining the age of twenty-one years, and without leaving lawful issue, then in that event I give the said land to my daughter, Cornelia E. Riley, Sarah Isabella A. Robert, and Elizabeth Ann Robert, or to the survivor or survivors, should either of them be dead.   Sixth.  I give to my grand-son, Robert Franklin Bostick, my gold watch and one dollar in money, in lieu of any further claims on my estate.   Seventh.  I give to my son-in-law, Benjamin R. Bostick, one dollar, in lieu of any further claims on my estate.   Eighth.  I give to my daughter-in-law, Elizabeth Robert, one dollar, in lieu of any further claims on my estate.   Ninth.  All the rest and residue of my estate, not otherwise disposed of by this instrument, it is my will and desire shall be equally divided between my two sons, Lucius C. Robert and John H. Robert, and my three daughters, Cornelia E. Riley, Sarah Isabella A. Robert, and Elizabth Ann Robert, under such limitations as will be herein afterwards expressed and declared; provided, also, that the property given (by deed or otherwise) by me hereafter to either or any of my said two sons, Lucius C. Robert, John H. Robert, or three daughters, Cornelia E. Riley, Sarah Isabella A. Robert, and Elizabeth Ann Robert, shall be taken and regarded as so much of their portion received of the rest and residue of my estate, to be divided among my two sons and three daughters, as above mentioned in this ninth item. Tenth.  It is my will that should any of my children entitled to inherit under any clause or contingencies embraced in this

instrument, be dead before such contingencies arise, and leaves issue, such issue shall inherit the property to which the parent would be entitled under such limitations as will be hereinafter expressed and declared. Eleventh. It is my will that my sons be put into possession of the property left them by this instrument when they respectively arrive at the age of twenty-one years or marry, which first may take place. Should any of my sons die without leaving lawful issue of their body (which issue shall be under the limitations hereinafter mentioned with regard to their property), it is my will that the property of my said son, or sons, bequeathed in this instrument, except the land bequeathed to my sons, Lucius C. Robert and John H. Robert, which are specially provided for in items fourth and fifth, shall revert to my estate, and be equally divided among my children, share and share alike, under such limitations as will be hereinafter expressed and declared as aforesaid. Twelfth. Property, both real and personal, to which my daughters, Cornelia E. Riley, Sarah Isabella A. Robert and Elizabeth Ann Robert, may severally be entitled under this instrument, I give and bequeath to my executor and executrix hereinafter named, in trust, for the sole and separate use of my said daughters, severally, during life; and at the death of either of them, then the portion of said child to descend to such child or children as she may leave alive at the time of her death, under such limitations as will be hereinafter expressed and declared, as above mentioned; but if either of my said daughters shall die without leaving child or children at the time of her death, their proportion, except when otherwise specially provided for in this instrument, as in items fourth and fifth, shall revert to my estate, and shall be equally divided among my children, under such limitations as will be hereinafter expressed and declared, as above mentioned. Thirteenth. It is my will that my minor children's property be kept together and managed to the best advantage, and that my minor children be decently and comfortably supported and properly educated, and the surplus of the crops, after defraying all necessary

expenses, to be put out at interest, on good securities, or invested in bank stock. As each of my sons and daughters marries or attains the age of twenty-one years, the portion of said child shall be delivered to him or her; but upon the express conditions and limitations embraced in the various clauses of this will, and upon no other; provided, also, and it is my will and desire, that my minor children's negroes shall be worked at my Mount Hope and Cotton Hill plantations until my minor sons become severally possessed of their said lands by virtue of this instrument. Fourteenth. It is my will that should any of my children die leaving a child or children, such child or children shall inherit the property to which his, her or their parent is entitled to under this instrument; but should such child or children die leaving no lineal issue, the property of said child or children shall revert to my estate and be divided among my children. Lastly. I appoint my wife, Anna M. Robert, during her widowhood and no longer, executrix, and my brother, Wm. H. Robert, executor of this will. In testimony of this being my last will and testament, written on two sheets of paper, I have hereunto affixed my hand and seal to each sheet, this twenty-first day of December, in the year of our Lord 1833, and fifty-seventh year of American Independence. (Signed) John H. Robert. (L. S.) * * *"

From Circuit decree defendant appeals.

*Messrs. Jas. W. Moore* and *Leroy F. Youmans,* for appellants, cite: *Recording copy of old will after December 1, 1867, not constructive notice:* 13 Stat., 411, 384; 5 S. C., 146; 13 Rich. Eq., 223; 11 Rich. Eq., 572; 16 Stat., 732; 17 Stat., 150. *Plaintiffs are estopped by 46 years silence:* 1 Johns. Ch., 453; 2 Rich. Eq., 190; Bail. Eq., 177; 9 Mod., 37. *As to construction of will:* 8 Rich. Eq., 23; 1 Bligh., 1; 7 Rich. Eq., 102; 12 Rich. Eq., 122; 4 McC., 497; 2 Rich. Eq., 139; 1 DeS., 137; 7 Rich. Eq., 107; 10 S. C., 143; 10 Mod., 242; 5 Bing., 180, 492; 1 Jones, 26; 12 Rich. Eq.,

268; Bail. Eq., 7; 57 S. C., 174; 1 Hill Ch., 268; 3 Rich. Eq., 563; 5 Rich. Eq., 363; 9 Rich. Eq., 67; 1 East., 259; 6 Rich. Eq., 94; 1 Strob. Eq., 344; 3 Rich. Eq., 560; 1 Ves., Sr., 200; 3 Ves., Jr., 102; 4 Ves., 439; 10 S. C., 365; 2 Simons Eng. Ch., 326.

*Messrs. C. J. Colcock* and *A. McIver Bostick,* contra. The latter cites : *No facts proved upon which to base defense of purchaser for value without notice:* 14 S. C., 312; 36 S. C., 208. *As to the construction of the will:* 16 S. C., 220; 3 Rich. Eq., 571; 11 S. C., 346; 24 S. C., 304; 6 S. C., 336; 8 Rich. Eq., 241; 2 Strob. Eq., 59; 36 S. C., 366; 33 S. C., 293; 7 Rich. Eq., 419; 37 S. C., 258; 39 S. C., 131; 16 S. C., 290, 304; 28 S. C., 485; 27 S. C., 479; 8 Rich. Eq., 259; 11 Strob. Eq., 101; 56 S. C., 7; 51 S. C., 555.

November 28, 1900. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The plaintiffs bring this action for the recovery of the possession of certain real estate, situate in that part of Hampton County which prior to the passage of the act establishing that county was located in Beaufort County. The complaint is in the usual form, and the defendant by her answer sets up first, a general denial of all the allegations of the complaint. Second, she alleges that she is the owner in fee, and is in possession of the land described in the complaint. In the other paragraphs of her answer the defendant pleads the statute of limitations as a defense to the action. The case was tried by his Honor, Judge Townsend, without a jury, by consent, as we assume, there being no objection to that mode of trial, upon certain admitted facts and a certified copy of the will of John H. Robert, the grand-father of the plaintiffs, under which they claim title to the land in dispute, which is designated in said will as "my Mount Hope plantation." For a proper understanding of the questions presented by this appeal it will be necessary for the reporter to incorporate in his report of the

10—59

case, the "admitted facts," and the copy of the will of John
H. Robert, sr., as set out in the "Case."

The plaintiffs claim title as remaindermen under the will
of their grand-father, insisting that under the will, their
father, John H. Robert, jr., only took a life estate in Mount
Hope, with remainder to them as his sole surviving children;
while the defendant contends that John H. Robert, jr., took
a fee defeasible in Mount Hope, or at least a fee conditional,
and that his title has been transferred to her, through a sale
for the foreclosure of the mortgage referred to in the "ad-
mitted facts," and the conveyance to her from the purchaser
at such sale. The Circuit Judge in his decree sustained the
contention of the plaintiffs and rejected that of the defend-
ant, and from the judgment in favor of the plaintiffs, the
defendant appeals upon the several exceptions set out in the
record.

These exceptions need not be set out here, as they raise
only three questions: 1st. Whether there was error in disal-
lowing the plea of the statute of limitations. 2d. Whether
there was error in rejecting the defense *set up in the argu-
ment,* that the defendant was a purchaser for valuable con-
sideration without notice. 3d. Whether there was error in
holding that John H. Robert, sr., took only a life estate under
the will of the testator, with remainder to his surviving chil-
dren.

As to the first question, we do not see how there can be any
doubt. If John H. Robert, jr., took only a life estate, the
plaintiffs' right of action did not accrue until his death, and
the admitted fact is that he died in May, 1897, only
about a year before the commencement of the action;
and hence the statute of limitations was not a bar to
the action.

As to the second question, it seems to us equally clear that
there was no error on the part of the Circuit Judge in reject-
ing the defense of purchaser for valuable consideration with-
out notice, for the reasons which he gives. He says: "Her
counsel (alluding to the defendant) also argued that

she is an innocent purchaser for value without notice. This last mentioned defense, however, was not set up in the answer, nor is it sustained by the facts, so that I will not further consider it." In this there was no error. Such a defense must be set up in the answer (*Lupo* v.*True,* 16 S. C., at page 586), and to make it available it must be sustained by the necessary proofs. Here no such defense was set up in the answer; and we do not think the facts in the case are sufficient to sustain such a defense. For while it is stated in the statement of the admitted facts that the defendant had bought the land for valuable consideration, it nowhere appears that such consideration was ever paid, and there is no denial of notice; for even if it should be-conceded (which we neither admit nor deny) that the recording, or rather the re-recording of the will, after the destruction of the records in Beaufort County, in February, 1865, did not operate as *constructive* notice, yet *actual* notice is nowhere denied. In 2 Pom. Eq. Jus., sec. 785, in speaking of the requisites of such a defense, it is said: "It should state the consideration, which must appear from the averments to be valuable, within the meaning of the rules upon that subject, and should show that it has actually been paid and not merely secured. It should also deny notice in the fullest and clearest manner, and this denial is necessary whether notice is charged in the complaint or not." See, also, *Snelgrove* v. *Snelgrove,* 4 DeS. Eq., at page 286, *et seq.,* which, though a Circuit decision, has been cited in the notes to the section of Pomeroy above referred to, as "a very full statement of all the requisites for a good plea," and has likewise been recognized in the recent case of *Summers* v. *Brice,* 36 S. C., at page 212. See, also, *Bush* v. *Bush,* 3 Strob. Eq., 131; *Lynch* v. *Hancock,* 14 S. C., 66, and *Black* v. *Childs,* 14 S. C., 312.

The suggestion, made in the argument here, that the defendant should be allowed to amend her answer by pleading the defense of purchaser for valuable consideration, cannot be adopted, for these reasons. 1st. It does not appear from the record before us that any motion was

made to the Circuit Court for leave to amend, or that any such matter was considered by that Court, and, therefore, the application comes too late. But there is a still better reason for declining to adopt the suggestion of counsel for defendant, and that is that the proposition involves an entire and radical change in the defense set up in the answer, by setting up a distinct and different defense, not only after trial, but after judgment; and this even the liberal provisions of the Code forbid. It may be that the Court might, in a proper case, allow the defendant to amend her answer by conforming the pleadings to the facts proved, but this cannot be allowed in this case for two reasons. Sec. 194 of the Code provides that the Court may, before or after judgment, allow any pleadings to be amended, "when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." Here, however, the proposition is to amend the answer not only by changing substantially the defense, but by setting up an entirely distinct and independent defense. 2d. The pleadings cannot be amended here by conforming the pleadings to the facts proved, because, as we have seen, the facts proved would not sustain such a defense as it is proposed to set up by the amendment.

The only remaining inquiry is as to the proper construction of the will of the testator, John H. Robert, sr.—or, to state the question more precisely—whether John H. Robert, jr., took, under the will, an estate for life only in the land in dispute, with remainder to the plaintiffs as his sole surviving children. The cardinal rule to be observed in the construction of a will is to ascertain, if possible, what was the real intention of the testator; and this, as was said in *Snider* v. *Robertson,* 9 S. C., at page 229, "must be done, not by resorting to conjecture as to what was likely to be such intention, but by an attentive and careful consideration of the words of the will, in each and every part of it, guided by such rules of law as experience has shown to be useful in seeking such intention. We are to read the will

*as a whole,* and *from its terms* ascertain, if practicable, what was in the mind of the testator when he executed it." From a view of all the provisions of the will, it is manifest that it was not drawn by an expert, and hence we find that words are not always used with technical accuracy. For example, we find that the words "bequeath" and "bequeathed," are used in reference to the disposition of real estate, instead of the more correct words "devise" and "devised," in the second, fourth, fifth and eleventh clauses of the will. So, also, the word "inherit" is used in the second, tenth and fourteenth clauses of the will, to designate property which the beneficiary takes under the will, instead of its more technically accurate sense. We also find that the testator, when he intended to give to any of his beneficiaries an estate in fee simple, knew how to express such intention in appropriate terms. Thus we find that, in the second clause of the will, when the testator is providing for his wife, he gives the property intended for her, "to her and her heirs forever." So, also, in the third clause, where he is making provision for his son, William H. F. Robert, who seems to have been the only son who had attained the age of twenty-one years, when the will was written, he gives the property intended for such son, "to him and his heirs forever;" but in no other clause of the will are such terms used. The fifth clause of the will, omitting such portions thereof as relate to other lands not here in controversy, reads as follows: "I give and bequeath to my son, John Hancock Robert, my Mount Hope plantation, bought of F. Aiken, containing, by resurvey, 1,186 acres * * * the said land to be put in his possession at his ariving at the age of twenty-one years of age or day of his marriage, which first may take place. Should my son, John Hancock Robert, however, depart this life before attaining the age of twenty-one years, without leaving issue of his body, then and in that case, I give the land hereby bequeathed to him to my son, Lucius C. Robert, in lieu of the lands bequeathed to him above in item fourth; but should both my sons, Lucius C. Robert and John Robert, die before attaining the age of

twenty-one years, and without leaving lawful issue, then, in that event, I give the said land to my daughters, Cornelia E. Riley, Sarah Isabella A. Robert and Elizabeth Ann Robert, or to the survivor or survivors, should either of them be dead." Now, while it may be true that, if this clause stood alone, John H. Robert would take a fee defeasible, by his death without issue, before attaining the age of twenty-one years, leaving no lawful issue, by virtue of the provisions of the act of 1824, now incorporated in the Revised Statutes of 1893, as section 1995, which provides that: "No words of limitation shall be necessary to convey an estate in fee simple by devise, but every gift of land by devise shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator expressed or implied." But the fifth clause of the will does not stand alone. On the contrary, the testator, in the fourteenth clause (which is the last, except the clause appointing his executors), thus expressed his intention: "It is my will that should any of my children die leaving a child or children, such child or children shall inherit the property to which his, her or their parent is entitled to under this instrument; but should said child or children die leaving no lineal issue, the property of such child or children shall revert to my estate and be divided among my children." This plain expression of the intention of the testator is entirely inconsistent with the idea that the testator intended to give his son, John H. Robert, by the fifth clause of his will, anything more than a life estate; and hence, under the express terms of the act of 1824, in the absence of words of inheritance or perpetuity, the fifth clause cannot be construed as conferring anything more than a life estate upon John H. Robert. For if he took a fee simple absolute, or a fee defeasible, or even a fee conditional, that would entirely defeat the provision made for his surviving children by the terms of the fourteenth clause of the will. If he took a fee either absolute or defeasible, he would, by devise or alienation, absolutely destroy the interests intended to be secured to his children by the fourteenth clause; and if he took a fee

conditional, he having married and had issue born, he could likewise destroy such interests by alienation in his lifetime. It seems to us, therefore, absolutely necessary to construe the will as giving only a life estate to John H. Robert, jr., with remainder to his surviving children; as, otherwise, the provision made for the child or children of any child of the testator, who dies leaving children, is absolutely nugatory. No significance can be attached to the use of the word "inherit," in the fourteenth clause; for, as we have seen, whenever that word is used in the will, it is manifest that it was not used in its primary sense, but is always used to signify the right of the beneficiaries to take *under the will.* Besides, it would border on the absurd to say that the word "inherit" is used in its primary sense in the fourteenth clause; for that would be saying that the testator was doing the nugatory act of making the same provision in his will, as the law would make if there had been no will. If it should be said that the testator, having given an estate in fee to his son, John H. Robert, in the fifth clause, as claimed by the appellant, made the provision in the fourteenth clause, using the imperative terms "*shall* inherit," for the purpose of preventing his son from alienating the property which he took under the will, such a provision would become null and void, as a person cannot be invested with an estate, and at the same time denied the right to the incidents of such estate. See *Verdier* v. *Youngblood,* Rich. Eq. Cases, at page 221; *Moore* v. *Sanders,* 15 S. C., 440. Thus the provision in the fourteenth clause would be rendered nugatory; and this is not permissible, if that clause can be so construed as to give it force and effect; and this, it seems to us, can only be done by adopting the construction placed upon the will by the Circuit Judge. It will be observed that the testator, after having made special provisions for his wife and children, and after he had made provision for a certain contingency, so far as related to his two sons, Lucius C. and John H., were concerned, to wit: the contingency of either of them dying *before* attaining the age of twenty-one years, without lawful issue, proceeds, in the four-

teenth and, practically, the last clause of the will, to provide for another contingency, which had not previously been provided for, to wit: the death of any of his children, "leaving a child or children," in the words above quoted. Now, it is quite certain that John H. Robert was one of the children of the testator; that he has died leaving the plaintiffs as his sole surviving children, and it follows, necessarily, that under the express terms of the fourteenth clause, they are entitled now to take the property which their parent—John H. Robert— was entitled to under the will, amongst which is the Mount Hope plantation, the land here in dispute.

It is argued, however, that the Mount Hope plantation is excepted from the operation of the fourteenth clause. It is very certain that neither that property nor any other is expressly excepted from the operation of the fourteenth clause, for that clause contains no words of exception. The argument, however, is that beginning with the ninth clause, all the balance of the will deals exclusively with the "rest and residue" of the estate of the testator; and as the Mount Hope plantation had been previously disposed of in the fifth clause of the will, it cannot be included in the rest and residue of the estate. This argument is fully disposed of by two considerations. In the first place, it is based upon the assumption that Mount Hope plantation had been *fully* disposed of by a devise in fee to John H. Robert, which is the very point in issue. But the second consideration is a still more conclusive answer to the argument, and that is, it is not true, as matter of fact, that all the balance of the will, beginning with the ninth clause, deals *exclusively* with the rest and residue of the estate. For while it is true that the ninth clause does purport to deal with the rest and residue of the estate, it is not true that either the tenth, eleventh, twelfth, thirteenth or fourteenth clauses deals exclusively with the rest and residue of the estate. On the contrary, the tenth clause deals with *any* of the property which any of the children may take, "under *any* clause or contingencies embraced in this instrument"— which, of course, includes whatever property such children

may take under the will of the testator, whether under the residuary clause or any other. The eleventh clause, in express terms, deals with *any* of the property left the sons of the testator by his will; and the language used plainly refers to property given them by special provisions of the will, viz: "It is my will that my sons be put into possession of the property left them by this instrument when they, respectively, arrive at the age of twenty-one years or marry, which first may take place;" which plainly embraces property specifically devised or bequeathed to them, as well as their respective shares of the residue. So, also, the twelfth clause relates to *any* property which the daughters of the testator may take under his will, which, of course, includes any property which they may take under any special clause or contingency as well as their respective shares of the residue. So, also, the thirteenth clause relates entirely to the management and disposition of the property of the testator's minor children, and has no reference to the rest and residue of the estate, except incidentally. Finally, the fourteenth clause, in express terms, relates to any of the property which any of the children of the testator may take under the provisions of the will, which, of course, embraces property specifically devised or bequeathed to them, as well as their respective shares of the residue. So that it is clear that there is no warrant for the contention that the Mount Hope plantation is excepted from the operation of the fourteenth clause of the will.

Again, it is argued that the Mount Hope plantation is specially excepted from the provisions of the eleventh clause of the will, because provision had already been made, in the contingency there contemplated; in the fifth clause of the will. Conceding this to be so, we are unable to conceive how that would affect the present inquiry. In the eleventh clause of the will, the testator was providing for a certain contingency, to wit: the death of either of his sons, *"without leaving lawful issue of their body,"* and as that contingency had already been provided for in the fifth clause, the property disposed of by the fifth clause was, of course, excepted from the provi-

sions of the eleventh clause. Here we are called upon to determine what disposition the testator has made, in the event of a wholly different contingency, to wit: the death of one of the children of the testator, *"leaving a child or children;"* and this contingency is provided for only in the fourteenth clause. We are unable, therefore, to see how the provision which the testator has seen fit to make, by the eleventh and fifth clauses of his will, in one contingency, can possibly affect the question which we are called upon to determine— what provision he has made in case of the happening of *another* and wholly different contingency. So, also, we are unable to perceive the pertinency of the argument drawn from what is called the exception contained in the twelfth clause. In that clause the testator provides for the settlement upon his daughters, of such property as they may, severally, be entitled to under the will; and after vesting such property in trustees to hold the same for the sole and separate use of his said daughters, severally, during life, and providing what disposition shall be made of the property in case either of said daughters should die, leaving a child or children surviving, proceeds as follows: "but if either of my daughters shall die, without leaving child or children at the time of her death, their proportion, except when otherwise specially provided for in this instrument, as in items fourth and fifth, shall revert to my estate and shall be equally divided among my children, under such limitations as will be hereinafter expressed and declared as above mentioned." Upon recurring to the fourth and fifth clauses of the will, it will be found that the testator had there provided, in the contingency there mentioned, to wit: the death of both of the testator's sons, Lucius C. and John H., before attaining the age of twenty-one years, and without leaving lawful issue, the property mentioned in those clauses should go to the three daughters, "or to the survivor or survivors, should either of them be dead." As this limitation of that property was different from the limitations imposed in the twelfth clause upon any other property which the daughters might

take under the will, it was necessary to make the exception found in the twelfth clause.    But how this can affect the question which we are called upon to determine, we are unable to perceive.    The daughters could only take the Mount Hope plantation upon a contingency which never occurred, and can now never occur, since John H. Robert did not die before attaining the age of twenty-one years and without leaving lawful issue, but has died after attaining that age, leaving children.    We are utterly at a loss to conceive how the provision for the daughters can throw any light whatever upon the question under consideration—who is entitled to the property in question, in the contingency which has occurred, viz: the death of John H. Robert, after attaining the age of twenty-one years, leaving children.    The provisions of the thirteenth clause of the will, referred to by counsel for appellant as sustaining his contention, seem to us rather to support the view which we have adopted.    In that clause we find the following language: "As each of my sons and daughters marries or attains the age of twenty-one years, the portion of said child shall be delivered to him or her, *but upon the expressed conditions and limitations embraced in the various clauses of this will, and upon no other* (italics ours).    And as we have shown one of the "conditions and limitations" expressed in one of the clauses of the will—the fourteenth—is that if any of testator's children die leaving a child or children, such child or children shall take the property to which his, her or their parent is entitled under this will.    Now, it is conceded that John H. Robert, one of the children of the testator, has died leaving the plaintiffs as his sole surviving children, it follows necessarily that the plaintiffs are entitled to the property to which their parent was entitled under the will, which includes the Mount Hope plantation.

It will be seen that thus far we have discussed the question as to the proper construction of the will under consideration, without reference to authority, and have based our conclusions as to the intention of the testator upon a careful consid-

eration of the whole will, without confining our attention to any particular clause, scrutinizing closely the language in which the testator has undertaken to express his intention. It only remains for us·to consider whether the conclusion which we have reached is sustained by, or is in conflict with, authority which we are bound to follow. It is true, that prior to the act of 1824, above referred to, there was a conflict between the Court of Appeals in equity and the Court of Appeals at law, in reference to the necessity for using the words of inheritance in a devise of real estate, in order to create a fee. But it is not true, that the opinions of the Court of Equity were founded upon the proposition, that where a limited estate was intended to be created, "it is almost [always] if not universally expressed in appropriate terms." While Mr. Justice Johnson, in delivering the opinion of the Court in *Peyton* v. *Smith,* 4 McC., at page 479, does use language to that effect, yet an examination of the case in the Court of Equity will not sustain such assertion. On the contrary, the cases usually cited to show what was the view of the Equity Court of Appeals, will disclose the fact that the chancellors, in almost every instance, where they held that, by·a devise, without words of inheritance, a fee might be created, endeavored to discover, and supposed that they did discover, in other portions of the will under consideration, evidence of the intent of the testator to create an entire estate in fee; and, therefore, it seems to us, that it would be more correct to say, as was said by Mr. Justice Nott, in his dissenting opinion in *Dunlap* v. *Crawford,* 2 McC. Ch., 171, based their conclusion upon the intention of the testator, as disclosed by other portions of the will. See *Whaley* v. *Jenkins,* 3 DeS. Eq., 80; *Clark* v. *Mikel,* 3 DeS. Eq., 168, in which case Chancellor DeSaussure in his Circuit decree, which was adopted by the Court of Appeals, expressly admits that a naked devise, without words of inheritance, will not carry the fee,. unless it is coupled with other circumstances, which show an intent to create a fee. *Waring* v. *Middleton,* 3 DeS. Eq., 249, which also turned upon the intention of the

testator, discoverable from other portions of the will.  *Jen-kins* v. *Clement,* Harp. Eq., 72, in which the decision is based upon the three cases last cited, though DeSaussure, Ch., in delivering the opinion of the Court, does go on to add some additional considerations which he says brought his mind to the conclusion that the testator intended to create a fee.  It is in that case that the words quoted and relied upon in the argument of appellant's counsel occur, viz: "In all such cases the testator would limit the estate for life or years, if he so intended."  But in the very next sentence he uses the following language: "He makes no further disposition of the property, as he would have done if he had not meant to give a fee."  Showing, that if the will, in that case, had, like the will in the case now under consideration, made a further disposition of the property in dispute, the learned Chancellor would have regarded the further disposition of the property as evincive of an intention *not* to give a fee to John H. Robert.  For, as we have seen, the testator, after devising the land in dispute to John H. Robert, without words of inheritance, goes on to make further disposition of the property in the event which has happened—the death of John H. Robert, leaving children—by the fourteenth clause.  The cases last cited were all decided prior to the passage of the act of 1824. On the contrary, prior to the passage of that act, the Law Court of Appeals had decided, in *Hall* v. *Goodwyn,* 2 N. & McC., 383 (which was recognized and followed in *Wither-spoon* v. *Dunlap,* 1 McC., 546), "that a devise of land without words of perpetuity, and where there is nothing in the will from which a fee can be raised by implication, vests only a life estate in the devisee."  In view of this conflict of decision between the two Courts, the legislature stepped in, with a view to settle this conflict and establish what should be the true rule by the passage of the act of 1824, the terms of which are hereinabove quoted.  After that act was passed, the question again came before the Court, in the case of *Boatwright* v. *Faust,* 4 McC., 439, where it was held that, prior to the act of 1824, a devise of real estate containing no

words of inheritance or perpetuity carried only a life estate; and that, as the will in that case was executed, and the testator had died before the passage of the act of 1824, its provisions could not be applied in the construction of the will. But, at the very same term, the old case of *Hall* v. *Goodwyn,* 4 McC., 442, again came before the Court, and there it was decided "that the act of 1824 was declaratory of what the law was, and, therefore, operated retrospectively;" and hence the words of the will must be construed as creating a fee simple. The same point was also decided in *Dunlap* v. *Crawford,* 2 McC. Ch., 171, after the passage of the act of 1824. As it seems to us, the result of it all is that while we think it clear that the will of the testator, John H. Robert, sr., should be construed by the rule laid down in the act of 1824, inasmuch as it bears date 21st December, 1833, and the testator died some time subsequent to that date—in 1852, as we infer from what appears in the "Case;" yet, even if the rule adopted by the old Court of Equity should be applied, the result would be the same. For, as we have shown above, if the provisions of the act of 1824 are to govern, then the provisions of the fourteenth clause are inconsistent with the view that the testator intended to create a fee in the devise to John H. Robert, without any words of perpetuity or inheritance. But if, on the other hand, the rule adopted by the former Court of Equity is to govern, then there is nothing in the will which evinces an intention, on the part of the testator, to create a fee by that devise, but just the contrary.

We will next consider the contention of appellant's counsel, that the fourteenth clause of the will relates only to such of testator's children as should die before the occurrence of the contingencies mentioned in the will, and, therefore, does not include John H. Robert, the father, and must be read in connection with the tenth paragraph or clause of the will, together with the cases of *Sealy* v. *Laurens,* 1 DeS., 137; *Chaplin* v. *Turner,* 2 Rich. Eq., 139, and *Presly* v. *Davis,* 7 Rich. Eq., 107, cited to sustain that contention. In all these cases the question presented was as to what period words of

survivorship, or other equivalent terms, were to be referred—whether to the death of the testator, or to some furture period, as, for example, the termination of some intervening particular estate, or where the time of division is fixed at some future period.    We are unable, therefore, to conceive how those cases sustain or even are pertinent to the contention set up by appellant.    But, besides, in order to sustain such contention, it would be necessary to interpolate words into the fourteenth clause which the testator has not placed there, and thus to entirely revolutionize that clause. The testator, in that clause, is providing for a contingency which is no where else mentioned in the will, to wit: the death of *any* of his children, leaving a child or children—not for the death of *such* children as may die before the happening of the contingencies mentioned in the will, to wit: the death of either Lucius C. or John H., before attaining the age of twenty-one years or marriage, without issue; for he had already provided for that contingency in the fourth and fifth clause, and had provided in the tenth clause for the contingency of their dying, "before such contingencies arose," leaving issue; and now in the fourteenth clause he proceeds to provide for another and different contingency.    It is impossible, therefore, to read the fourteenth and tenth clauses in connection, as contended for by appellant, as they relate to wholly different contingencies.

We will next consider the contention on the part of the appellant, that under the rule that, "where general terms, no matter how comprehensive they may be, are in apparent conflict with special provisions in the same instrument, such conflict may be avoided by regarding the special provisions as exceptions to the general provisions, and Courts may read the two clauses as if words of exception were inserted," the special provisions in regard to the Mount Hope plantation, found in the fifth clause, must be read as an exception to the general provisions in the fourteenth clause.    There is no doubt that the rule invoked is well settled, and is fully sustained by the authorities cited by the counsel for appellant.

But that rule cannot be applied to the present case, for the
following reasons.    In the first place, so to apply it would be
necessary to assume the very point in issue, to wit: that the
terms of the fifth clause create an estate in fee, and that
assumption is not well founded, as we have seen.    But, in
the second place, it cannot be applied, for the reason that the
statute furnishes a different rule, in cases like this, which is
controlling.    As we have seen, the act of 1824, which was
passed for the express purpose of providing the rule of con-
struction in a case like this, declares that where there is a
devise of real estate unaccompanied by words of inheritance
or perpetuity, such devise shall create a fee, *"unless* such a
construction be inconsistent with the will of the testator,
expressed or implied."    In this case, as we have seen, if the
devise, in the fifth clause, be construed as creating a fee, such
a construction would be entirely inconsistent with the will
of the testator, as plainly expressed in the fourteenth clause
of his will; and, therefore, such a construction can not, under
the express terms of the statute, be adopted.    The contention
on the part of appellant that, if John H. Robert, jr., did not
take a fee simple absolute, or a fee defeasable, in the property
in dispute, he at least took a fee conditional, is, it seems to us,
entirely inadmissible.    The usual terms by which such an
estate is created—heirs of the body—are not to be found in
either the fifth or the fourteenth clauses, nor, indeed, in any
other clause of the will.    The only way in which such a con-
tention could be sustained would be by reading the words
child or children, as meaning heirs of the body.    This un-
doubtedly is in direct conflict with the general rule upon the
subject.    *Ruff* v. *Rutherford,* Bail. Eq., 7; *Snoddy* v.
*Snoddy,* 1 Strob. Eq., 84; *Mathis* v. *Hammond,* 6 Rich. Eq.,
at page 401-2, in which case Wardlaw, Ch., in delivering the
opinion of the Court of Errors, uses these words: "There
can be no dispute that the term children is not a technical
word of limitation, and is ordinarily a word of purchase,"
and, he adds, "will not include grand-children or more re-
mote descendants," except "where the will would be other-

wise inoperative, or where the context, by the employment of the terms issue or descendants, promiscuously with children, exhibits the intention of the testator to use the term children in a secondary and liberal sense.   Such liberal construction of the term children is never made, except for the benefit of the issue of children, or from the force of the context (citing the authorities).   It is not made when persons exist who accurately fulfil the terms of description." See, also, *Williams* v. *Kibler,* 10 S. C., 414; *Hill* v. *Thomas,* 11 S. C., 346; *Bannister* v. *Bull,* 16 S. C., 220; *Smith v. Smith,* 24 S. C., 304, and the very recent case of *Logan* v. *Brunson,* 56 S. C., 7, besides many other cases to same effect.   It is quite true, that there are some few cases in which the terms "child or children" have been construed to mean "issue" or "heirs of the body."   But that is done only "in support of the intention of the testator, where the will would be otherwise inoperative, or where the context, by the employment of the terms issue or descendants, promiscuously with children, exhibits the intention of "testator, to use the term children in a secondary and liberal sense" (to use the language of Wardlaw, Ch., in *Mathis* v. *Hammond, supra*).   For example, the case of *Addison* v. *Addison,* 9 Rich. Eq., 58, is cited and much relied on by counsel for appellant.   But the terms of the devise there are very different from those used in the will which we are construing.   There the devise was to trustees, "for the sole benefit of my son, Joseph A. Addison, during his natural life * * * But if my said son, Joseph A. Addison, should die without leaving any child or children, or representatives of child or children, in that case my will is that the above property be equally divided between my son, George A. Addison, and my daughter, Emeline S. Mims," &c.   It will be observed that there was no provision for the event which occurred, to wit: the death of Joseph A. Addison, *leaving* a child; and it was held that Joseph A. took an estate in fee conditional, in order to avoid an intestacy in the event which did occur.   For, as was said by Wardlaw, Ch., in his Circuit decree, which was adopted by the Court of Ap-

11—59

peals, "unless the life estate given to Joseph A. Addison can be enlarged, by implication, into a fee conditional, the consequence would be, in the event which has happened, of the primary legatee's leaving issue, that the property is not disposed of, as it cannot go to himself, his issue, or the ulterior legatees; and that the testator has miscarried in the attempt to dispose of his whole estate." No such necessity exists in the present case, and, therefore, the case of *Addison* v. *Addison* does not apply. So, also, in the case of *Simons* v. *Bryce,* 10 S. C., 354, the terms of the will were very different from those used in the will which we are now called upon to construe. There the testator used the terms "child or children and the terms heirs of the body," indiscriminately, as applied to the same class of persons, while here we find nothing of the kind, and hence that case does not apply. For these reasons, and under the authorities cited above, it is clear that the rule in Shelly's case cannot be applied to this case. See, also, *McIntyre* v. *McIntyre,* 16 S. C., 290, and the cases therein cited; *Carrigan* v. *Drake,* 36 S. C., 354, and *Gadsden* v. *Desportes,* 39 S. C., 131.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.