---

### PINELAND CLUB et al. v. ROBERT et al.

### SAME v. SANDERS et al.

#### (Circuit Court of Appeals, Fourth Circuit. June 9, 1909.)

#### Nos. 850, 851.

**1.** WILLS (§ 433*) — DOCUMENTARY EVIDENCE — EXEMPLIFICATION OF WILLS — SOUTH CAROLINA STATUTE.

Under Civ. Code S. C. 1902, § 2994, which provides that "in all actions the exemplifications of wills under the hand of the judge of probate and the seal of the court in which such will may have been admitted to probate * * * shall be admissible in evidence in any of the courts of this state," a copy of a will, unaccompanied by a certificate signed and sealed, is not an exemplification of the will, and is not admissible in evidence.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 433 ;* Evidence, Cent. Dig. § 1321.]

**2.** WILLS (§ 433*)—DOCUMENTARY EVIDENCE—EXEMPLIFICATION OF WILL—COPY OF RECORD.

Act S. C. Dec. 20, 1866 (13 St. at Large, Ex. Sess. p. 384) § 7, provides that "in all cases in which any instrument in writing is required by law to be recorded or registered and such record or registry, together with the original, is lost or destroyed, but a copy thereof, certified to under the hand of a proper officer, has been preserved, such certified copy shall be recorded or registered and be in the room and stead of the original." Section 4 of the same act provides for obtaining an order for such substitution from the court or judge in chambers on service of notice. *Held*, that the entry on the records of a probate court of what purported to be a copy of a will, accompanied by a certificate signed by a former judge, but not bearing the seal of the court, nor showing that such will had ever been admitted to probate, and without any record of any order of a court or judge authorizing such recording, was not such a substitution as authorized by the statute, and that a certified copy of such record was not an exemplified copy of the will admissible in court as an evidence of title

to real estate, under Civ. Code S. C. 1902, § 2994; there being, further-more, no record of the probate of the original of such will.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 433;* Evidence, Cent. Dig. § 1321.]

**3.** EVIDENCE (§ 181*)—SECONDARY EVIDENCE—GROUNDS FOR ADMISSION.

What purports to be a copy of a will is not admissible as secondary evidence of its contents, without proof of the due execution and exist-ence of the original and that it has been lost or destroyed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 600; Dec. Dig. § 181.*]

In Error to the Circuit Court of the United States for the District of South Carolina, at Charleston.

These two cases were consolidated and heard together by the court below. They were instituted by the defendants in error to recover of the plaintiffs in error certain lands lying in Hampton county, S. C. The title to two tracts of land is involved in this controversy. The third tract was involved, but as to this tract a verdict was entered for the defendants below. The plain-tiffs below claim title under will of John H. Robert, Sr., who died on July 4, 1835, and who, the plaintiffs allege, left a will dated December 21, 1833. The will devised both tracts of land to the testator's son, Lucius. The plain-tiffs claim that under the will Lucius took a life estate only, with remain-der to his children. The plaintiffs below in case No. 850 are Edward Robert and Anna Connerat, both of them children of Lucius. The plaintiffs below in No. 851 are Pauline Sanders, a daughter of Lucius, and M. R. Sanders, L. B. Sanders, C. W. Sanders, Callie Daniel, and T. C. Carmichael, children of Isabella, another daughter of Lucius, who died in his lifetime. The defend-ants' title to the Cotton Hill tract and the Pineland tract, being the lands involved in these two cases, commences with a deed from William M. Bostick, trustee, to Joseph W. Maner, executed in the year 1860, which was lost or destroyed and the record of which was burned in the war. Thereafter, on June 1, 1867, Bostick, trustee, executed a confirmatory deed, which recites the earlier deed, and that it was executed in pursuance of a court proceed-ing in the year 1859 to authorize Bostick, trustee, to sell and convey the land to Joseph W. Maner. The said Maner sold a part of these lands to Maj. William J. Lawton, by deed dated January 14, 1874, and the remainder he sold to William R. Lawton by deed dated December 5, 1889. The two Law-tons sold and conveyed to John K. Garnett, and Garnett sold and conveyed to the trustees of the Pineland Club. The defendants and those under whom they claim insist that they have been in the continuous, open, notorious, and adverse possession of the Cotton Hill and Pineland tracts ever since the deed of 1860 from Bostick, trustee, to Maner.

J. S. Clark (Smythe, Lee & Frost, on the brief), for plaintiffs in error.

B. A. Hagood (Benj. H. Rutledge, C. J. Colcock, James A. Harley, and E. F. Warren, on the briefs), for defendants in error.

Before GOFF and PRITCHARD, Circuit Judges, and MORRIS, District Judge.

PRITCHARD, Circuit Judge (after stating the facts as above). The first question to be determined is as to whether the plaintiffs below offered any valid or legal proof of the will of John H. Robert, Sr. Title to real estate may be established in South Carolina by three meth-ods—the first being a grant from the lords proprietors, the king, or the state, and a complete chain to the plaintiff; second, establishment of adverse possession in one of the plaintiff's grantors for more than 10 or 20 years, as the case may be, the title by 10 years being given

by statute of limitations and that by 20 years presuming a grant; third, by establishing a common source of title from whence both parties to the record, plaintiff and defendant, derive their title. If the plaintiffs in an action like the one at bar establish a common source of title with that of the defendant, then they are relieved from the burden of proving the title of the common source from which they derive such title.

The Supreme Court of South Carolina in the case of Robert v. Ellis, 59 S. C. 137, 37 S. E. 250, had this identical will before it, in which proceeding it was sustained; but that was because of the agreed statement of facts before the court as to the existence of the copy of the will and as to the probate of the same. However, the defendants in the case before us had the right, which they duly exercised, of questioning the existence as well as the proof of such will, and therefore it is incumbent upon us in this case to determine the same.

In this instance it is sought to establish title to the lands in controversy by establishing a common source of title from whence both parties to the record derive their title. Therefore this case must stand or fall upon the question of fact as to whether the plaintiffs have established a common source. If they establish a common source, then they are not required to go further and prove the title of the common source from which they derive their title. It appears that plaintiffs offered a copy of the will of John H. Robert, Sr., to which is attached a certificate to the effect that it is a true and correct copy from the records of the ordinary, and this certificate is signed by E. F. Morrall, ordinary. However, the seal of the ordinary is not attached to this copy. The paper offered purports to be a certified copy of the records of the ordinary, and the signature of the ordinary was proven. Under Morrall's certificate, another certificate was attached to this paper, signed by J. C. Cunningham, judge of probate. This certificate states that the paper is a true and correct copy of the will of John H. Robert, Sr., and it appears that this paper was offered by plaintiffs, first upon the faith of Morrall's certificate, and later upon the faith of Cunningham's certificate.

The plaintiffs in error's first assignment is to the effect that plaintiffs below failed to show either a grant from the state or a common source of title. This raises the question as to whether the court below erred in admitting, as competent evidence, the copy of the will tendered by the plaintiffs below. The first objection to this document is based upon the ground that the certificate accompanying the same was not sealed in accordance with the provisions of section 2494 of the Civil Code of South Carolina of 1902, which reads as follows:

"In all actions, the exemplifications of wills under the hand of the judge of probate and the seal of the court in which such will may have been admitted to probate * * * shall be admissible in evidence in any of the courts of this state."

The provisions of this statute are mandatory, plain, and explicit, and leave no doubt as to the legislative intent. Under this statute a copy of a will, unaccompanied by a certificate, signed and sealed, cannot be deemed to be an exemplification of a will. Where it is attempted, as in this instance, to prove a record by the method provided by the

statute, it is essential that the requirements of the statute be complied with strictly; but it appears in this case that the plaintiffs below had failed to comply with the provisions of the statute in this respect, and under such circumstances the paper offered is not in compliance with the requirements of the statute.

The next objection made by the defendants below was to the effect that the copy offered by the plaintiffs below is not an exemplification of the will. Webster defines "exemplification," when used in a legal sense, to mean:

"A copy or transcript attested to be correct by the seal of an officer having custody of the original."

That the probating of a will is a judicial proceeding is well established. The court which performs these functions is known as the "probate court," and the law by virtue of which it is created provides that it shall be a court of record. A will cannot be recorded until a decree has been entered by a probate court admitting the same to probate. The proceedings in that court are required to be regular, and every step necessary to secure such decree must be taken before the same can be entered. Thus it will be seen that, where a will has been admitted to probate in pursuance of a decree obtained in the probate court, one can readily ascertain from the records as to whether the proceedings were regular and as to whether the record is complete.

In order that wills may be preserved and perpetuated, the Legislatures of the various states have wisely provided the means by which they may be admitted to probate and entitled to registration in pursuance thereof. Once a will has been admitted to probate in pursuance to a judicial proceeding of this character, such paper may not only be recorded in the proper records of the county in which the testator resides, but the original, after being recorded, when accompanied with a proper certificate as to its identity, may be introduced as evidence in any proceeding where it may be relevant as such; and in order that the rights of those claiming under such an instrument may be fully protected, in the event of the destruction of the records or the original by fire or otherwise, parties in interest may, by presenting a copy thereof, certified under the hand and seal of 'the proper officer, have the same again recorded, and thereafter an exemplification of such copy may be used as competent evidence in any court of record.

Section 7 of the law of South Carolina approved December 20, 1866 (13 St. at Large, Ex. Sess. p. 384), provides:

"In all cases in which any instrument in writing is required by law to be recorded or registered and such record or registry, together with the original, is lost or destroyed, but a copy thereof certified to under the hand of the proper officer has been preserved, such certified copy shall be recorded or registered and be in the room and stead of the original."

The plaintiffs below evidently rely upon this section in support of their contention that the recording of the copy in question was proper and in accordance with the law of that state. This brings us to a consideration of the question as to whether the will was re-recorded in accordance with the provisions of section 7 of this act. In this connec-

tion it is pertinent to consider section 4 of the act to which we have referred, which reads as follows:

"Orders for leave to substitute any new records or records in judgments or decrees destroyed or lost may be made at chambers as well as in term time, without the consent of the parties, provided they have been served with notice as hereinbefore provided. * * *"

Sections 4 and 7, being a part of the same act and relating to the same subject, must be construed together. Section 4 provides the means by which leave may be obtained to substitute new records for judgments or decrees destroyed or lost, and the recordation in the first instance having been based upon a decree of the probate court, in order to entitle the same to be substituted instead of the record of which it is a copy, it became necessary for the plaintiffs to appear before the court at chambers or in term time in order to have the same passed upon before it could be properly admitted to probate and thereby re-recorded.

Section 7 provides that a copy of any instrument lost or destroyed, when certified under the hand of the proper officer, may be recorded or registered, and be in the room and stead of the original. Therefore, in order to determine as to whether the copy of the will in this instance, in the condition in which it was offered as evidence, is an exemplification of such will, as contemplated by section 2494 of the Civil Code of South Carolina of 1902, we must ascertain as to whether the same has been re-recorded in accordance with the requirements of sections 4 and 7.

An exemplification of a will, as contemplated by the law in this instance, must necessarily mean a copy of the will accompanied by a certificate of the proceedings necessary to be taken in order to authorize the same to be entered of record. This is especially true as respects the order admitting the will to probate. As we have already stated, the original of this will, if it existed, could only be offered as evidence when accompanied by a proper certificate showing that it had been duly probated and recorded in accordance with the laws of that state. Such being the case, it can hardly be insisted that a copy of a will, unaccompanied by any of the means of identification necessary to render it competent as evidence, would be admissible in a trial affecting the title to land as in this instance. To hold that the copy of the will in question is competent evidence would be tantamount to holding that less formality is required in the introduction of a copy than when the original is offered as evidence.

There is nothing in the record to show that any proceedings were instituted by virtue of which a decree was entered admitting the will to probate, and an examination of the copy shows that the seal of the court, as required by the statute, was not attached thereto. The Supreme Court of South Carolina, in referring to the meaning of the term "exemplification of a will" in the case of Hankinson v. Railroad Company, 41 S. C. 17, 19 S. E. 213, said:

"For the letters of administration amount practically to a judgment of the court of probate rendered on the proceedings on record in that court and instituted for that purpose, and in the absence of any statute upon the subject the general rule would require that the whole record of the proceedings

culminating in a judgment would have to be introduced in order to prove the judgment. * * *"

In this instance the plaintiffs rely upon the certificate of J. C. Cunningham, judge of probate. The judge of probate was called as a witness, and brought with him his record book in which this will was recorded in 1873. From the record thus produced it appears that there was no decree admitting the will to probate, nor was there any decree admitting the same to record. Judge Cunningham, among other things, testified as follows:

"Q. Are you probate judge of Beaufort county? A. Yes, sir. Q. Is there any record in your office of the will of John H. Robert? A. Yes, sir; there is. Q. Will you produce the evidence of that will? Is this the only record in your office giving what purports to be a copy of the will of John H. Robert? A. Yes, sir. Q. Has this book which you bring in here any name? A. No, sir. Q. Is there any writing on the fly leaves? A. No, sir. Q. What book is it? How would you describe the book? A. I have always described it as the 'old book,' whenever there was any reference wanted. We have two books, the old and new. Q. The will that you last put is on page 158 of this book? A. Yes, sir; against there. Q. Have you made a search in your office for any other record of this will? A. Yes, sir; a thorough search. Q. What has been the result? A. Found nothing at all. Q. Nothing but this? A. Nothing but that. Q. In the records of your court is there any probate of this will? A. None at all; never have found one. Q. There is nothing in regard to the will except that? A. I cannot see; in fact, there is nothing, no evidence in the office over 12 years."

The witness also, among other things, testified:

"Q. You put your certificate on the will of Robert which has been put in evidence, when you only meant to certify that it was a true copy of this copy which is in this book here? A. I think that was specifically stated. Q. Your intention was to certify? A. Yes; because I mentioned at the time— I said: 'I can't give this as a copy of John H. Robert's will. I give it to you as a certificate as I found it on record in this office'—certified copy of the will which I found on record at that time. Q. Is there any order in your office authorizing, so far as you know, the probating of that will on the books? A. None that I know of. Q. Do you know of anything connected with that will at all, excepting just as it is in that book there? A. Nothing; nothing more than that paper, purporting to be the copy from which that was taken, brought in by Mr. Colcock."

While it thus appears that the copy of the will, together with the certificate of E. F. Morrall, ordinary, had been copied in full in the book produced by Judge Cunningham, it does not appear that, at the time this copy was entered upon the records, it was accompanied by any certificate by which it could have been identified as being authentic, nor was there any decree authorizing the same to be admitted to probate and recorded in accordance with the law of that state. In fact, there is nothing to show that any effort whatever was made by the plaintiffs to comply with the provisions of the statute which authorizes the recordation of instruments of this character. It must be borne in mind that the record shows affirmatively that the instrument in question was entered upon the record in utter disregard of the requirements of the law of that state and without the slightest authority for the recordation of the same; and, there not being sufficient legal evidence to show that it is a copy of the original, the question as to whether such paper is a copy of the original will is therefore involved in doubt and uncertainty.

Under these circumstances we do not think that a copy of a will presented in this manner can be treated as an exemplification of a will. If the plaintiffs had offered legal proof of the execution of the will in the first instance, and also as to its contents, together with evidence of its loss or destruction, then the copy in question, after being identified as a copy of the original will, would have been competent as secondary evidence. But there is a total lack of proof as to the execution or existence of the original will. There seems to have been no effort on the part of the plaintiffs below to lay the foundation for the introduction of this paper as secondary evidence. It appears from the testimony of one of the witnesses that he made a search for the will, but could not find it. It is true that a Mr. Colcock testified that the copy which was offered in evidence was obtained by him from the attorney of the defendants in the case of Robert v. Ellis, 59 S. C. 137, 37 S. E. 250. But this evidence, standing alone, is not sufficient. It is elementary that, in order to lay the foundation for the introduction of secondary evidence, it must clearly appear that the lost paper actually existed. The general rule is laid down in 19 Am. & Eng. Ency. of Law, p. 575, as follows:

"In an action on an instrument which the plaintiff claims to have been lost or destroyed, he must, before he can introduce secondary evidence of its contents, prove its former existence as a genuine instrument, and that it has been lost or destroyed. * * *"

Also in the case of Weatherhead's Lessee v. Baskerville et al., 11 How. 360, 13 L. Ed. 717, the court, in discussing the rule, among other things, said:

"The point still to be noticed is so much of the instruction given to the jury, informing them that they might presume from the evidence that there had been a legal partition of the testator's land in respect to his daughters by order of a court when the executor assigned them certain parts of it. By the law of Tennessee such a partition is a judicial act and becomes a record. It can only be proved as such records may be, and, when it is alleged to have been lost or destroyed, its contents can only be reached by proofs of a certain and fixed kind, well known in the law. In the proper sense of the term "presumed," the records of courts are never so. The existence of an ancient record of another kind may sometimes be established by presumptive evidence. But that is not done without very probable proof that it once existed, and until its loss is satisfactorily accounted for. The rule in respect to judicial records is that, before inferior evidence can be received of their contents, their existence and loss must be clearly accounted for. It must be shown that there was such a record, that it has been lost or destroyed, or is otherwise incapable of being produced, or that its mutilation from time or accident has made it illegible; in this last, though, not without the production of the original in the condition in which it may be. The inferior evidence to establish the existence of a judicial record must be something officially connected with it, such as the journals of the court, or some other entry, though short of the judgment or record, which shows that it has been judicially made. The burning of an office and of its records is no proof that a particular record had ever existed. It only lays the foundation for the inferior evidence. If that cannot be got, the result must be, and is, that there has been an allegation of the existence of a record, without proof. There is no way of bringing it to the knowledge of others. Nor can it be said to be known certainly by him who asserts it. In this case, without any such proof, the jury was told that they might infer, from the burning of the records of the county of Mero and the conduct of the parties interested in the testator's lands, that there had been a partition according to law. If the

instruction is put exclusively upon the want of proof to justify it, it could not be maintained. But it was contrary to the positive proof in the record. * * *"

The defendants in error rely upon the cases of Counts v. Wilson, 45 S. C. 571, 23 S. E. 942, and Howard v. Quattlebaum, 46 S. C. 95, 24 S. E. 93, in support of their contention. In those cases there was sufficient proof to clearly establish the existence of the will; but in this instance the testimony is not sufficient to answer the requirements of the rule. If the plaintiffs below in the case at bar had been able to furnish sufficient proof as to the existence of the will as was done in those cases, then undoubtedly the instrument in question would have been competent evidence for the purpose for which it was tendered. However, we are of opinion that, in the absence of such proof in this instance, the court below erred in admitting this instrument as competent evidence.

For the reasons hereinbefore stated, the judgments of the Circuit Court are reversed, and the cases are remanded, with instructions to proceed in accordance with the views herein expressed.

Reversed.