UNITED STATES FIDELITY & GUARANTY CO. v. UNITED STATES, to
Use of GRISCOM–SPENCER CO.

(Circuit Court of Appeals, Third Circuit. January 4, 1910.)

No. 34.

1. UNITED STATES (§ 67*)—CONTRACT FOR PUBLIC WORK—CONTRACTOR'S BOND
—ACTION—LIMITATION—STATUTES.

Where a federal contract had been performed prior to Act Cong. Feb.
24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1909, p. 948), amending
Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), the
one-year limitation prescribed by such amendment was inapplicable to an
action by a materialman against the contractor's surety.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec.
Dig. § 67.*]

2. PRINCIPAL AND SURETY (§ 104*)—CONTRACTOR'S BOND—PAID SURETY—DIS-
CHARGE—EXTENSION OF TIME—PRESUMPTION OF INJURY.

The fact that a person furnishing material to a government contract-
or extended the time of payment by accepting the contractor's three
months note raised no presumption that the contractor's paid surety was
injured thereby sufficient to constitute a defense to an action by the ma-
terialman on the contractor's bond.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§
186–190, 193–195, 197–199, 200; Dec. Dig. § 104.*]

3. PRINCIPAL AND SURETY (§ 155*)—PAID SURETY—DISCHARGE—EXTENSION
OF TIME—PLEADING.

Where, in an action on a contractor's bond against his paid surety,
defendant's affidavit of defense urged an extension of time to the prin-
cipal in discharge of its liability on the bond, and that, pending such
extension, receivers were appointed for the contractor, but did not allege
that the contractor became insolvent during such extension, or that the
receivers were appointed because of the contractor's insolvency, or facts
showing that the extension operated injuriously to the surety in any
other manner, it was insufficient.

[Ed. Note.—For other cases, see Principal and Surety, Dec. Dig. § 155.*]

In Error to the Circuit Court of the United States for the Eastern
District of Pennsylvania.

Action by the United States, to the use of Griscom-Spencer Company,
against the United States Fidelity & Guaranty Company. Judgment
for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 172 Fed. 268.

R. Stuart Smith and Charles E. Morgan, for plaintiff in error.

Samuel Crowther, Jr., and George Quintard Horwitz, for defendant
in error.

Before BUFFINGTON, Circuit Judge, and McPHERSON, Dis-
trict Judge.

J. B. McPHERSON, District Judge. The nature of this controversy
appears in the opinion delivered by Judge Holland in the circuit court,
which is reported in 172 Fed., at page 269. Little need be added to his
satisfactory discussion of the questions involved, and we shall there-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fore content ourselves with noticing briefly the argument of the plaintiff in error.

1. It was argued that the limitation of one year prescribed by the act of 1905 (U. S. Comp. St. Supp. 1907, p. 709, 1909, p. 948) governs the dispute, and that the present action is barred, because it was not brought by the use-plaintiff, who was a subcontractor, until more than a year after the final settlement between the United States and the principal contractor, the Neafie & Levy Ship & Engine Building Company. This precise question arose in another suit upon the same bond that is now before the court, and was decided by Judge Lanning. It is sufficient to refer to his opinion in United States, to Use of Williamson Bros. Co. v. United States Fidelity & Guaranty Co. (C. C.) 171 Fed. 247, for the reasoning that fully justifies his conclusion that the limitation prescribed by the act of 1905 does not apply to the present contract, which was fully completed several months before the statute was passed.

2. But it is also contended that when the present use-plaintiff, or its predecessor in interest, accepted the promissory note of the Neafie & Levy Company and had it discounted for the plaintiff's own benefit, the time wherein payment of the claim could be demanded from the principal contractor was thereby irrevocably extended until the due date of the note, and that such extension so injured the surety as to justify the present denial of its obligation. The injury is said to have been caused in the following manner: The note was given to the use-plaintiff on September 15, 1904, and was not due until December 15th. The plaintiff immediately had the note discounted by a bank, and the result of the transaction was that the right of the plaintiff to demand payment of its account from the Neafie & Levy Company was, if not impliedly transferred to the bank, at least suspended until December 15th, while the bank also could make no demand until the note fell due. Meanwhile the Neafie & Levy Company made a full settlement in October with the United States for all that was due upon the contract, and, having thus received and otherwise used money that ought to have been applied to the plaintiff's claim, went into the hands of a receiver on December 9th, a few days before the note fell due. It is therefore argued (to use the language of the brief on behalf of the surety company) that:

"The effect of extending the time of payment by taking the note of the Neafie & Levy Company was to deprive the surety on the bond for the payment of claims of persons supplying labor and materials to the contractor of the opportunity of preventing the United States from paying over the retained percentages or the balance of the contract price to the Neafie & Levy Company until the materialmen were paid, or unless payment of the materialmen out of the sums due by the United States was assured. This was sufficient to release the surety on the bond."

As will be seen, this argument rests solely upon the assumption that an injury to the surety is to be presumed, either prima facie or conclusively, from the mere fact that the Neafie & Levy Company received an extension of time, although there is no averment of actual injury to the surety in the affidavit of defense, and although no fact is set forth therein from which injury can be inferred, except the fact that

a receiver was appointed for the Neafie & Levy Company on December 9th before the maturity of the note. But, in suits upon bonds given to the government to secure a contractor's faithful performance of his undertaking, the mere fact that the time of payment was extended for a reasonable time raises no presumption of injury to the surety. This was decided by the Supreme Court in Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242, and there is nothing in the affidavit of defense to bring the surety company within the exception stated by Mr. Justice Brown. His language is this:

"The facts of this case do not call for an expression of opinion as to whether, if an unusual credit were given, and in the meantime the principal obligor had become insolvent, or the surety were otherwise damnified by the delay, it might not be exonerated. Since neither of these contingencies supervened in this case, we are remitted to the naked proposition whether the giving of a customary credit, with no evidence of loss thereby occasioned, is sufficient to discharge the surety."·

In the Circuit Court it was held by Judge Holland that a credit for three months was not "unusual," and therefore that the situation referred to in the foregoing quotation had not arisen. We do not criticise this holding in the slightest degree—indeed, its correctness was admitted by the plaintiff in error as a general proposition—but we desire to point out another reason why such a situation is not now presented. And the reason is this: The surety company has not averred that the Neafie & Levy Company became insolvent before the maturity of the note, or that harm was done in any manner by the acceptance of the contractor's note. We have no information whatever concerning the reason which induced the common pleas of Philadelphia county to appoint the receiver; but it is well known that such an appointment may be made on other grounds than insolvency—although this is, no doubt, the most frequent ground—and from the failure of the surety company to do more than aver the bare fact of the receivership we feel justified in supposing that the affidavit has gone as far as it properly could. And there is no averment of injury of any kind, either actual or contingent, caused by the extension of the time of payment. All that the affidavit contains on this subject is to be found in the following paragraph:

"Before the maturity of said note, to wit, on or about October 31, 1904, the War Department of the United States made final settlement with the Neafie & Levy Ship & Engine Building Company for the contract price on the contract aforesaid, and on December 9, 1904, before the maturity of the said note, John W. Grange and Sommers N. Smith were appointed receivers of the Neafie & Levy Ship & Engine Building Company by the court of common pleas. No. 5, of the county of Philadelphia and state of Pennsylvania.

"The defendant had no knowledge of the acceptance of said note by the James Reilly Repair & Supply Company (the plaintiff's predecessor) nor of the extension of time for the payment of the indebtedness of the Neafie & Levy Ship & Engine Building Company resulting therefrom."

It should be remembered, we think, in considering this defense, that .there has been some change of attitude in the courts toward the obligation of a corporate surety. The subject has been recently passed upon in the case of Baglin v. Title, etc., Co. (C. C.) 166 Fed. 356, affirmed by

the Court of Appeals 178 Fed. 682, and we may be permitted to quote with approval what was there said by the Circuit Court:

"Nor is there any reason to be astute in looking about for flaws that may invalidate the transaction. The defendant is not entitled to the tender consideration that is accorded to an individual surety who is a mere volunteer. Surety companies are not to be so described; they are insurers, paid for their services, bound by contracts which are usually carefully drawn by themselves, and, as a general rule, satisfactorily secured by counter indemnity. They perform a most useful. and indeed, according to modern custom, an indispensable. function in the business and legal world; but they differ so much from an individual surety of the ordinary type as to render inapplicable some of the reasons that have led the courts to guard the rights of the individual surety with jealous care. Just how far the rules that apply to volunteer sureties should be modified when their protection is sought by a surety company is not yet settled; but that some modification is necessary plainly appears from several decisions. For example. in Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242, it was held that:

"'The taking by a materialman of 30 and 60 day notes for materials supplied to one contracting with the government, and who had given the bond of a surety company in pursuance of the act of August 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901. p. 2523), to the effect, among other things, that he would "promptly make payment to all persons supplying him labor or materials." will not necessarily relieve the surety company from obligation under the ordinary rule that exonerates a guarantor in case the time fixed for the performance of the contract by the principal be extended without his consent, where it does not appear that such extension was unreasonable, or that the surety was prejudiced thereby.'

"In deciding the case the Supreme Court recognized the difficulty of laying down any general rule, but evidently took note of the comparatively new subject presented for consideration, and the need for modifying the old rules as occasion might arise:

"'The rule of strictissimi juris is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation which has undertaken for profit to insure the obligee against a failure of performance on the part of the principal obligor.'

"And the Court of Appeals for the Fourth Circuit, in Atlantic Trust Co. v. Laurinburg, 163 Fed. 695 [90 C. C. A. 279], used the following language:

"'Fully recognizing the rule of strictissimi juris as applying to contracts growing out of the ordinary relation of creditor and simple surety, we cannot and do not recognize this rule as applying to contracts underwritten by these bonding corporations, whose business it is (and a profitable one too, it would seem, from the number organized and existing) to insure, for a monetary consideration, the obligee against a failure of performance on the part of the principal obligor. In such cases, before such bonding company can be released, it must show that the changes made in a contract like this, guaranteed by it, operated injuriously to affect its rights and liabilities. * * * The very reason for the existence of this kind of corporations, and the strongest argument put forward by them for patronage, is that the embarrassment and hardship growing out of individual suretyship that gives application for this rule is by them taken away; that it is their business to take risks and expect losses. If, with their superior means and facilities, they are to be permitted to take the risks, but avoid the losses by the rule of strictissimi juris, we may expect the courts to be constantly engaged in hearing their technical objections to contracts prepared by themselves. It is right, therefore, to say to them that they must show injury done to them before they can ask to be relieved from contracts which they clamor to execute.' "

We regard these views as sound, and believe they should be applied in a proper case.

Since, therefore, there is no averment of the principal debtor's insolvency during the extension of credit—the proper effect of such an averment, standing by itself, may be left until the question arises—nor of any injury that was caused by such extension, we are of opinion that the surety company presented no defense that required submission to a jury.

The judgment of the Circuit Court is affirmed.