## HARTFORD ACCIDENT & INDEMNITY CO. v. FEDERAL BOND & MORTGAGE CO., Inc., et al.

### No. 9358.

Circuit Court of Appeals, Eighth Circuit. May 13, 1932.

Hubert M. Harvey, of St. Paul, Minn. (Roy J. Mordaunt, of St. Paul, Minn., on the brief), for appellant.

Loring M. Staples, of Minneapolis, Minn. (John C. Benson and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for appellees.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and DAVIS, District Judge.

VAN VALKENBURGH, Circuit Judge.

This is a suit on a surety bond given by appellant to appellees as trustees in a certain trust deed or mortgage. One Nathan Tatkin and wife were the owners of a building site in St. Paul, Minn., upon which they were about to erect a thirteen-story office building. Appellee Federal Bond & Mortgage Company undertook to finance the construction of this building, and to this end floated a $400,000 bond issue, secured by the deed of trust aforesaid, in which it and Nathan M. Gross, one of its officers, were named as cotrustees. This deed of trust was dated September 1, 1923. November 10, 1923, Tatkin as principal and appellant as surety, for a valuable consideration, to protect the bondholders from mechanic's liens, executed to appellees a bond in the sum of $150,000 with the following conditions:

"Now, therefore, if the said principal shall well and truly pay, or cause to be paid, all claims of whatsoever nature or kind for labor performed on or materials or skill furnished in and about the erection and construction of the improvement hereinbefore mentioned, and shall save harmless and keep indemnified the obligees against any and all loss, costs or damages by reason of any lien, liens, or claim of liens for such labor, skill and materials so that said mortgage shall be and remain a first lien thereon and if the said principals shall establish and maintain said mortgage as a first lien prior to all other liens on said premises, then the above obligation to be void; otherwise to remain in full force and effect.

"It is expressly agreed as follows:

"(1) That a filing of any lien or liens on said premises on account of said improvements shall constitute a breach of the condition of this instrument; providing that if said principal and/or surety shall promptly cause each lien which may be so filed to be released as provided in chapter 521, of the Session Laws of Minnesota for 1921, and shall maintain such release or releases, then no action shall be brought on this instrument.

"(2) That if in any action an order for judgment or a judgment be obtained declaring any claim for labor, materials or skill on account of the said improvements a lien on said premises, the files and proceedings in such action, or a copy of any part thereof certified by the clerk of the court in which said action is had, shall be conclusive evidence as between the parties hereto of all matters in said files and proceedings set forth with the same force and effect as if said prin-

cipals and sureties were parties to such action and appeared and defended therein.

"(3) That if said obligees, their successors or assigns shall in case of the foreclosure of the said mortgage purchase said premises and acquire title under said foreclosure, such purchase and acquisition of the title shall not be a payment of said mortgage debt in whole or in part as respects the obligation of this instrument, but said obligees, their successors and assigns shall have the same right under this instrument in all respects as if the said mortgage debt was still in full force and fully unpaid."

Chapter 521, Laws of Minnesota 1921, provides that any one having an interest in property against which a lien claim has been filed may obtain a release of the lien upon making a deposit in court in such amount, sufficient to take care of the lien, as the court may order. The lien is then released of record, and the parties may still litigate its validity, the sum deposited being substituted for the land subject to the lien.

Toltz, King & Day, Inc., a corporation, was the architect for the proposed building. November 20, 1923, Toltz, King & Day and Tatkin entered into a lease agreement wherein the architectural and engineering fee was fixed at 5 per cent. of the cost of construction, and it was agreed that, in payment for their services, Toltz, King & Day would take a ten-year lease of the top floor of the building, and would pay an additional rental sum of $1,000 per year therefor. It was made a condition precedent to the final acceptance of this lease by Toltz, King & Day that Tatkin should complete the building free of all liens, except mortgage liens aggregating not more than $500,000. However, it was provided that Toltz, King & Day might waive this condition and accept the lease, if they elected so to do. April 17, 1924, Tatkin, original owner and principal in the surety bond, conveyed his interest in the property to Deane, Inc., which, by written agreement, became a principal jointly with Tatkin in the mechanic's lien bond attached to said agreement, as fully as though originally joined as a principal. To this conveyance appellant formally consented.

December 22, 1924, the first mechanic's lien was filed against the property. This was followed by numerous others, including that of Toltz, King & Day, Inc., in the sum of $22,182.88. August 1, 1924, Toltz, King & Day, Inc., went into possession of the thirteenth floor of the new building under a separate agreement with Deane, Inc., and Tatkin that this occupancy should continue until the condition precedent in the lease agreement should be complied with, and until that agreement should become effective. If that condition should not be complied with, then rent in the sum of $500 per month should be paid for the period during which the occupancy of Toltz, King & Day, Inc., should continue.

The Toltz, King & Day lien was filed January 7, 1925. On or about January 2, 1925, the Herzog Iron Works, a lien claimant, commenced suit in the state district court to foreclose its lien, and thereafter a large number of such lien claimants, including Toltz, King & Day, Inc., joined in said action, asserted their claims of liens, alleged priority thereof over the lien of the trust deed, and prayed foreclosure respectively. In this foreclosure action Toltz, King & Day, Inc., claimed, in the alternative, a lease or a lien. The date of their joinder in this foreclosure suit was January 27, 1925.

February 13, 1925, the Federal Bond & Mortgage Company, through its attorneys, wrote attorneys for appellant. Their letter reads in part as follows: "You no doubt are aware of the lien foreclosure proceedings begun by Bishop H. Schriber for the Herzog Iron Works Company. We shall, of course, expect the Hartford Accident & Indemnity Company to assume the defense of this action or deposit sufficient funds in court to pay all the lien claims and get the same discharged of record."

Additional notices to the same effect were served by filing with the insurance commissioner February 26 and May 14, 1925. Action by the surety company was urged upon its attorneys orally. Mr. Mordaunt of counsel for appellant was expressly authorized to act for it generally as its representative in the matter of this lien bond. September 1, 1925, counsel for appellees wrote Sexton, Mordaunt & Kennedy, attorneys for appellant, as follows: "We feel that we have given you sufficient time to get this matter adjusted on a basis which would be least onerous to your Company. However we do not feel that you can in good faith ask us to wait longer for you to clear this title. We trust that you will promptly take such steps as are provided in the bond to eliminate the lien claim by Toltz, King & Day."

To these letters and notices neither appellant nor its representatives made reply. Since appellant refused or neglected to defend the Toltz, King & Day lien, this burden fell upon attorneys for appellees. All the

other liens were discharged by appellant, which was permitted to use for this purpose $41,000 "consisting of money remaining in the hands of the Federal Bond & Mortgage Company as trustee under the Trust Indenture, Exhibit B, out of proceeds of the loan which had not been disbursed for construction costs."

The trial of the Toltz, King & Day lien began November 3, 1926. The claim filed asked in the alternative for a lease or a lien. Accordingly, on motion, the court required Toltz, King & Day to elect between lease and lien. They elected to stand upon their claim of lien. December 20, 1926, the court entered its decree establishing the lien in the sum of $22,182.88 with interest and attorneys' fee, less an offset of $14,500, the amount of rent then owed by the lien claimant for the period since August 1, 1924. This lien was decreed to be prior to the $400,000 trust deed securing the bonds floated by the Federal Bond & Mortgage Company, and, to satisfy this mechanic's lien, a sale of the property was ordered. The surety company was notified of the establishment of the lien, and was requested to satisfy and discharge it. This it refused to do, and this suit resulted. The court found for appellees, and decreed a recovery in the sum of $17,520.97, which included interest and an attorney's fee of $3,000 for services in defending the lien action, by reason of the failure of appellant to discharge said lien and to defend the lien foreclosure suit within the terms of its bond.

Some intermediate transfers and transactions affecting the property concerned may be briefly mentioned. In June, 1925, Deane, Inc., conveyed its interest in the property to the Exchange Realty Corporation, which corporation agreed to assume the indebtedness of its predecessor. At this time all the lien claims except that of Toltz, King & Day were settled and satisfied. This was accomplished, as has been stated, by the action of appellee Federal Bond & Mortgage Company in turning over to appellant for that purpose the unused balance of the $400,000 loan. In June, 1926, the Exchange Realty Corporation borrowed $20,000 from the Federal Bond & Mortgage Company, pledging as security all of the second mortgage bonds which it then had or might thereafter acquire, and also a block of its stock. For further security the Federal Bond & Mortgage Company placed two men upon the board of directors of the Exchange Realty Corporation. It is admitted in the briefs that the Federal Bond & Mortgage Company owned a controlling interest thereafter in the stock of the

Exchange Building Corporation. Later, January 31, 1927, the Exchange Realty Corporation was unable to meet its obligations then due under the mortgages on the premises, which included a second mortgage of $100,-000. To avoid foreclosure, the Federal Bond & Mortgage Company procured a transfer of the fee to one Norman Lyle. His conveyance to the Exchange Building Corporation resulted in giving the Exchange Realty Corporation a privilege of redemption.

In its amended answer appellant set up three defenses:

(1) That the trust deed or mortgage expressly prohibited the mortgagors from transferring, conveying, or assigning any or all of their interest in and to the premises until the buildings or improvements to be placed thereon should be completely erected, free from mechanic's liens or lawful claims or liens. That appellant's bond was given with reference to the mortgage or trust deed which contained this inhibition. That on April 17, 1924, Tatkin and wife conveyed to Deane, Inc., in violation of that inhibition, and that thereafter in June, 1925, Deane, Inc., conveyed to Exchange Realty Corporation. That appellees assented, and appellant did not assent, to these conveyances, and that appellant's position as a surety was thereby prejudiced.

(2) That, prior to transferring the property, Tatkin and Toltz, King & Day, Inc., had entered into a formal lease of the nature hereinabove set out and subject to the conditions above stated. That Toltz, King & Day, Inc., in filing their lien, claimed, in the alternative, a lease or a lien. That thereafter one Donald Lyle and appellees, their agents and officers, conspired to prevent a ratification of the Toltz, King & Day, Inc., lease and to recover from appellant the amount of any lien judgment recovered. That to this end, by motion, they compelled Toltz, King & Day, Inc., to elect between lease and lien in the suit to foreclose the lien, thereby prejudicing appellant's rights as a surety, and so working a fraud upon appellant as to discharge it from its surety obligation.

(3) Under this defense it is claimed that appellees have not paid out the amount of the mortgage loan less commissions, an obligation correlate with that of the surety obligation. That appellees have, therefore, sustained no loss in the payment of the Toltz, King & Day, Inc., lien judgment, and that "to compel appellant to recover a judgment against Tatkin and seek relief in the ordinary manner of subrogation, which right defend-

ant as surety is entitled to, would result in a circuity of actions and multiplicity of suits."

■ 1. To the first transfer from Tatkin to Deane, Inc., appellant expressly assented. By its attorney in fact and resident assistant secretary it executed the instrument by which Deane, Inc., became a principal jointly with Tatkin in the mechanic's lien bond, and it was agreed by both principals and surety that said bond should continue in full force and effect to protect the obligees against all claims of lien. Of this transfer, therefore, appellant cannot be heard to complain. The conveyance from Deane, Inc., to the Exchange Realty Corporation was made in June, 1925, about four months after Toltz, King & Day had filed their lien and had joined in a suit for foreclosure. The surety in its bond expressly agreed: "That a filing of any lien or liens on said premises on account of said improvements shall constitute a breach of the condition of this instrument; providing that if said Principal and or surety shall promptly cause each lien which may be so filed to be released as provided in chapter 521 of the Session Laws of Minnesota for 1921 and shall maintain such release or releases, then no action shall be brought on this instrument."

■ The filing of liens on the premises had already worked a breach of this provision, and appellant, neither promptly nor at any time, caused the Toltz, King & Day lien to be released, nor did it take any steps toward that end, though repeatedly urged so to do prior to this transfer of title in June, 1925. It cannot, therefore, complain of changes in title which took place after its liability on the bond had attached by the filing of this lien and by its failure to take prompt steps to cause a release. There are other reasons why this contention of appellant cannot be indulged. It is a compensated surety, and to it the rule of strictissimi juris does not apply. It is necessary that it must show that a technical departure from the strict terms of the surety contract, if there has been such departure, has caused it to suffer injury. American Fidelity Co. v. Velie (C. C. A. 8) 196 F. 190, certiorari denied 226 U. S. 607, 33 S. Ct. 112, 57 L. Ed. 379; Pickens County v. National Surety Co. (C. C. A. 4) 13 F.(2d) 758; United States Fidelity & Guaranty Co. v. United States, to Use of Griscom-Spencer Co. (C. C. A. 3) 178 F. 692; Atlantic Trust & Deposit Co. v. Laurinburg (C. C. A. 4) 163 F. 690, 695; National Surety Co. v. Lincoln County (C. C. A. 9) 238 F. 705.

■ The transfer of property by a principal does not ordinarily release the surety, especially where, as in this case, the transfer did not release the principals Tatkin and Deane, Inc. There is no showing that appellees were advised of this transfer in advance, or assented to it. It is probably true that they learned of it afterwards, but in any event no possible injury to appellant resulted, because no liability of principals was thereby released. Illinois Surety Co. v. John Davis Co. et al., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206. The surety bond bound the "heirs, executors, administrators, successors, and assigns" of the parties thereto.

■ 2. At the time the lien foreclosure suit came on for trial, Toltz, King & Day, by their pleading, claimed in the alternative either a lease or a lien. The lease referred to was a conditional one as heretofore described. The trustees, to protect their trust and their obligations to the bondholders, were compelled to defend against this claim, because of the default of appellant in this regard. It was necessary at the close of the hearing to determine upon which alternative the claimant would elect to stand. Appellant contends that appellees with others, among them the owners of the building, conspired to force Toltz, King & Day to abandon their claim of lease and to rely upon their right to a lien. The record fails to support this contention. On the contrary, Mr. Doherty, who was attorney for Toltz, King & Day in the lien foreclosure case, testified that the decision of this election was "entirely up to him and Toltz, King & Day, and that nobody urged him as to which course he should take; that the court directed him to elect and he elected." He gives the following very cogent reason for his decision: He "elected to take a lien instead of a lease partly because the first mortgage was ahead of the lease and in default, and also because if they elected to take a lease and then released their lien it might be determined on appeal that they had waived their lien."

The fact that appellees may have preferred a lien to a lease is of no materiality. They were forced to take an active part in this litigation to protect their beneficiaries. The lien was a charge prior to the mortgage, and was so adjudged. They resisted it as trustees, and as such they were justified in paying the judgment and discharging the lien. The assignment to Gross, the cotrustee, and the subsequent satisfaction of the lien judgment was a natural and proper procedure to this end. The entire record sup-

ports the finding that appellees acted throughout in their capacity as trustees, and they were properly joined in bringing this action.

■ 3. It abundantly appears from the record evidence that appellees have paid out and disbursed the full amount of the $400,000 loan. A balance in the hands of the trustees was turned over to appellant to enable it to settle and discharge the mechanic's liens other than the claim of Toltz, King & Day. Of this action by the trustees certainly appellant can have no complaint. Its plea that it may be put to "a circuity of actions and multiplicity of suits" in order to establish its right of subrogation, if one it has, is without merit. If it desired to preserve such a right, as well as that of lease, it should have taken charge in the lien foreclosure suit and in the proceedings subsequent thereto, as was its privilege and duty under its obligation as a surety. Appellees owed it no duty in this respect.

■ This case was set for trial in the district court on June 1, 1931. May 12, 1931, appellant presented a motion for leave to file amended and supplemental defenses. Appellees filed affidavits in opposition thereto, chiefly upon the ground that the case had been prepared for trial on the issues joined, and that it would be impossible to meet new issues without unreasonably delaying the disposition of the case. The court, "after listening to argument of counsel, and upon all the files and records herein, including motion papers," denied the application to file amended and supplemental defenses. These proposed defenses were three in number, and alleged that there was a second mortgage or deed of trust of $100,000 on the premises involved; that the trustee in this deed of trust applied for a receiver for the property on the ground that the Exchange Building Corporation was diverting rents, and that the security of the second mortgage was impaired by reason of the extension of the Toltz, King & Day judgment; that the Federal Bond & Mortgage Company forestalled this receivership by entering into a stipulation that the rents would be applied to the extinguishment of liens having a priority over this second deed of trust.

It is further alleged that the Federal Bond & Mortgage Company has refused to carry out this stipulation, and has taken title to the property through the Exchange Building Corporation, in whose stock it owns a controlling interest; that this stipulation that the Toltz, King & Day lien would be paid out of the rents instead of being paid by the owner of the property operated as an extension to the debtor; and that the transfer to the Exchange Building Corporation constituted a fraud upon appellant, and, together with said extension, discharged the surety. Further, that the Federal Bond & Mortgage Company, by satisfying the Toltz, King & Day lien May 4, 1931, destroyed appellant's alleged right of subrogation, and thus discharged the surety. Aside from the presumption favoring the action of a chancellor in passing upon an application to amend in the face of impending trial, and in consideration of the circumstances surrounding the application and the status of the litigation as affecting the interests of the parties, we do not think these supplementary defenses are of substantial merit. It will be noted that the decree of foreclosure in the Toltz, King & Day lien was entered February 5, 1927, and that the liability of appellant had become fixed long prior thereto. It had taken no steps to satisfy this judgment which was not released until May 4, 1931, long after repeated attempts to procure action by appellant had been unsuccessful. We do not think appellant can avail itself of matters happening long subsequently to the judicial determination of its liability. As stated by its counsel at the hearing in this court, "we admit we are bound by the judgment, but the Federal should have staid out and not contested our right to a lease."

■ In these so-called supplementary defenses, appellant fails to distinguish between the acts of appellees as trustees for the bondholders and those of the Federal Bond & Mortgage Company in its individual capacity. It was in no sense bound to discharge the surety obligation of appellant; nor was any stipulation it may have enetered into with the trustee in the second mortgage made for the benefit of appellant. There was no privity between appellant and the trustee in the second mortgage, nor any relation upon which this alleged right of subrogation could be predicated. Appellees are trustees, and no merger could result, even though the Federal Bond & Mortgage Company be regarded as a purchaser through its alleged subsidiary the Exchange Building Corporation. Appellant's bond contained the following significant provision: "That if said obligees, their successors or assigns shall in case of the foreclosure of said mortgage purchase said premises and acquire title under said foreclosure, such purchase and acquisition of title shall not be a payment of said mortgage debt in whole or in part as re-

spects the obligations of this instrument, but said obligees, their successors and assigns shall have the same right under this instrument in all respects, as if said mortgage debt was still in full force and fully unpaid."

In Factors' & Traders' Ins. Co. v. Murphy, 111 U. S. 738, 4 S. Ct. 679, 681, 28 L. Ed. 582, the Supreme Court said: "It has been uniformly held that where an incumbrancer, by mortgage or otherwise, becomes the owner of the legal title or of the equity of redemption, the merger will not be held to take place if it be apparent that it was not the intention of the owner, or if in the absence of any intention said merger was against his manifest interest."

Compare Guaranty Trust Co. of New York v. Minneapolis & St. Louis R. R. Co. (C. C. A. 8) 36 F.(2d) 747, 764.

The first mortgage was then in default, and the trustees owed a first duty to the bondholders. It appears further in evidence that the Exchange Building Corporation never took in money enough beyond operating expenses, taxes, and interest to reimburse the Federal Bond & Mortgage Company for payment of the Toltz, King & Day lien. We do not think the trial court committed error in denying the motion to file these amended and supplementary defenses, nor that appellant was prejudiced by its action. May 11, 1931, while this action was pending, a receiver, the Detroit Trust Company, was appointed for appellee Federal Bond & Mortgage Company in the District Court for the Eastern District of Michigan. Appellant moved to abate the action in case the receiver did not intervene. The motion was denied. It was not made at the instance of the receiver. In a case involving this same point (Missouri, K. & T. Trust Co. v. German National Bank of Denver, 77 F. 117, 122), Judge Thayer, speaking for this court, said: "At the commencement of the trial in the circuit court, counsel for the trust company, as it seems, asked to have the receiver of the bank substituted as the plaintiff in the case, inasmuch as the bank had become insolvent, and a receiver of its affairs had been appointed, subsequent to the institution of the suit. This motion was denied, and an exception was taken by counsel for the trust company. We think that the motion ought to have been al-

lowed, if it was made at the instance of the receiver, and he desired to prosecute the action in his own name; but the denial of the motion is no ground for a reversal of the judgment which was subsequently rendered. The denial of the motion did not prejudice the rights of the trust company in any respect, and if the receiver desires to be substituted as a party plaintiff, so as to be in a position to control the judgment, on making a proper application to the circuit court he can still be made a party for the purpose above indicated."

See, also, Boston Elevated Ry. Co. v. Paul Boyton Co. (C. C. A. 1) 211 F. 812, 823.

The receiver had not asked to intervene. The witness Lyle testified that he was vice president of the Federal Bond & Mortgage Company, and was then in the employ of the receiver, who had made no change in trustees as a result of the receivership; that the receiver knew he had been subpoenaed as a witness in this case, and had facilitated his attendance at the trial in support of the interests of the trustee. In our judgment, no possible danger that appellant may be subjected to another suit on the same cause of action exists. The Federal Bond & Mortgage Company acted as trustee for the bondholders in this matter. If there had been any confusion of funds at any stage of the proceedings, adjustment may be made in the receivership case. However, appellees announce that the receiver is ready to intervene, if this court desires. We think such intervention would be proper and advisable, although not strictly necessary.

It is urged that the attorneys' fees allowed are excessive, but they are within the discretion of the trial court under the evidence adduced on this point. It may be added that the bond indemnified against costs and damages and that fees aggregating $3,100 were actually paid in this case. We think, however, that appellees' application for additional damages of 10 per cent. upon the amount of the judgment under rule 30 of this court should be denied.

We have carefully considered all the assignments upon which appellant relies for reversal, and our conclusion is that the decree should be affirmed. It is so ordered.