MASSACHUSETTS BONDING & INSUR-
ANCE CO. v. FEUTZ et al.

No. 14070.

United States Court of Appeals
Eighth Circuit.

June 27, 1950.

John Murphy, Kansas City, Mo. (Herbert E. Barnard, St. Louis, Mo., Tucker, Murphy, Wilson & Siddens, Kansas City, Mo., and Walther, Hecker, Walther & Barnard, St. Louis, Mo., on the brief), for appellant.

Wilbur B. Jones and Arthur J. Freund, St. Louis, Mo. (Salkey & Jones, St. Louis, Mo., on the brief), for appellees W. F. Feutz, W. R. Courtney and J. C. Mundy.

G. W. Marsalek, St. Louis, Mo. (Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, Mo., Paul G. Koontz, and Kemp, Koontz, Claggett & Norquist, Kansas City, Mo., on the brief), for appellee Maryland Casualty Co.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This is an appeal from a judgment in favor of W. F. Feutz, W. R. Courtney and J. C. Mundy and against Massachusetts Bonding and Insurance Company, entered on verdict of a jury. We shall refer to the parties as they were designated in the trial court.

The action is for the recovery of damages for the alleged breach of a surety bond executed by defendant, appellant herein. It is alleged in the complaint that plaintiff W. F. Feutz entered into an agreement with one Harry J. Murphy, whereby said plaintiff agreed that he, together with persons to be associated with him as his assigns, would furnish Murphy the sum of $40,000.00 in cash for the purpose of enabling him to purchase certain farm machinery designated as twenty-one self-propelled combines which Murphy represented would be forthwith resold by him at a profit of $25,000.00; that Murphy represented to said plaintiff that he was able to procure said farm machinery and that it could readily be sold by him and that he would so purchase and sell such machinery; that the return of the sum of $40,000.00, together with profits to accrue to said plaintiff and his assigns, was the consideration for said agreement; that Murphy agreed not to use any part of said funds for any purpose other than for the purchase of the specific farm machinery and that he would furnish plaintiffs a surety bond to be issued by a reputable compensated insurance company, to protect plaintiff and his assigns from any losses arising out of said agreement; that plaintiff Feutz paid Murphy the sum of $15,000.00 on March 18, 1947, and thereafter plaintiffs furnished Murphy additional sums aggregating $25,000.00, so that on or before March 31, 1947, plaintiffs had furnished Murphy, for the purposes of the agreement, the aggregate sum of $40,000.00; that on or about March 31, 1947, plaintiff Feutz assigned to plaintiff W. R. Courtney a three-eighths interest in said agreement and to plaintiff J. C. Mundy a one-fourth interest therein; that the agreement between Murphy and plaintiff Feutz was reduced to writing March 24, 1947; that contemporaneously with the payment of the $15,000.00 by Feutz to Murphy, Murphy, pursuant to the terms of an agreement with Feutz, furnished and delivered to Feutz a surety bond of the Maryland Casualty Company in the sum of $65,000.00, whereby Murphy and the Casualty Company bound themselves to the plaintiff Feutz and to others to whom said plaintiff might be responsible, to reimburse them for any loss which might be sustained by act of fraud or dishonesty of the said Murphy in the performance of said contract, and that each of the plaintiffs advanced and paid over to Murphy the funds referred to with knowl

edge of and in reliance upon said contract of suretyship; that contemporaneously with the payments of the money to Murphy by plaintiffs Courtney and Mundy, plaintiffs entered into an agreement between themselves whereby Feutz agreed to be responsible to Courtney and Mundy for the sums advanced by them to Murphy for any loss arising out of the venture together with profits to be realized by plaintiffs; that this agreement was reduced to writing and by reference was made a part of the complaint; that thereafter and during the month of April, 1947, Murphy requested plaintiffs to deliver to him the surety bond of Maryland Casualty Company and agreed in exchange to deliver to them a surety bond executed by the defendant Massachusetts Bonding and Insurance Company; that plaintiffs thereupon delivered up the Maryland Casualty bond and received in exchange the bond of the defendant Massachusetts Bonding and Insurance Company, a copy of said bond being attached to the complaint and by reference made a part thereof; that the surety bond of the defendant executed by Murphy as principal and the defendant as surety, obligated defendant to pay plaintiffs not exceeding the sum of $65,000.00 for loss sustained by reason of any acts of fraud or dishonesty on the part of Murphy while in the performance of the agreement referred to; that defendant agreed by said bond that the $40,000.00 furnished by plaintiffs to Murphy for the purchase of the combines described in the agreement would not be used for any other purpose. It is then alleged that Murphy, in violation of the terms and conditions of the bond, through acts of fraud and dishonesty in the performance of said agreement failed to purchase the twenty-one combines and failed to use the funds advanced to him by plaintiffs for the purchase of said machinery; that by reason of his acts of fraud and dishonesty all the funds furnished by plaintiffs to Murphy and the profits to accrue therefrom had been lost to plaintiffs' damage in the sum of $65,-000.00.

Defendant answered denying generally and specifically all the allegations of the complaint except as specifically admitted. It admitted the execution of the bond but alleged that the bond ran to W. F. Feutz, one of plaintiffs, as the sole obligee and that the bond was not executed for the benefit of plaintiffs Courtney and Mundy but for the benefit of Feutz only. It admitted the execution of the contract between plaintiff Feutz and Murphy as attached to plaintiffs' complaint; that plaintiff Feutz advanced only the sum of $15,000.00 and was not damaged in any amount exceeding $15,-000.00; that the loss, if any, suffered by Feutz had occurred prior to the execution of the bond by defendant and during the time that the Maryland Casualty Company bond was in effect, and that the loss sustained by the other plaintiffs, if any, were also sustained prior to the date of the execution of the defendant's bond; that if there had been any assignment by the plaintiff Feutz to plaintiffs Courtney and Mundy of an interest in the contract of March 24, 1947 between plaintiff Feutz and Murphy, the assignment was without the knowledge or consent of the defendant. The answer contains other averments which we think immaterial to the issues as presented on this appeal. On motion of the defendant, Maryland Casualty Company was made party defendant.

At the close of all the testimony defendant moved for a directed verdict in its favor which was denied and the case was submitted to the jury on instructions to which defendant saved certain exceptions. The basic facts alleged in the complaint as distinguished from the conclusions alleged may be said, in view of the verdict of the jury, to have been either admitted or proved. In the first instance plaintiff Feutz alone had the negotiations which culminated in the written contract with Murphy, dated March 24, 1947, but he later assigned interests in the contract to the other plaintiffs, they having furnished a portion of the funds required by the terms of the contract. The contract, omitting preliminary recitals, so far as here material reads as follows:

"Whereas, in order to procure additional funds with which to purchase said combines (first party) has induced the Party of the Second Part to join him in the purchase of

said farm machinery and furnish a portion of the funds necessary to purchase same, and

"Whereas the Party of the Second Part has agreed to furnish Forty Thousand Dollars ($40,000.00) of the Eighty-four Thousand ($84,000.00) necessary to complete the purchase of the 21 above mentioned combines,

"Now Therefore, Know All Men By These Presents, that in consideration of the promises and of the sum of One Dollar paid by the Second Party to said First Party and of the sum of One Dollar paid by the Second Party to said First Party, the receipts of which are both hereby acknowledged, the said First Party hereby agrees to purchase the farm machinery above described from certain sources known to him and to resell same in order that a profit may be realized.

"The Party of the First Part further agrees that he will not use any or any portion of the funds supplied by the Second Party for any purpose other than the purchase of the aforesaid farm machinery. Said purchases to be handled only on sight drafts being drawn by the sellers thereof with bills of lading attached, and the sales to be made only to solvent purchasers and shipment to be made by drawing of drafts with bill-of-lading attached.

"As further protection to the Party of the Second Part the Party of the First Part hereby agrees to allow the surety bond issued by the Maryland Casualty Company of Baltimore in the sum of Sixty-five Thousand ($65,000.00) to be used by said Second Party, or his assigns if any part of his interest in this agreement is assigned to someone else, to cover any losses as specified therein, said bond being dated March 18, 1947.

\* \* \* \* \* \*

"The Parties hereto agree that all profits or losses arising from this transaction shall be borne equally, one-half to the First Party and one-half to said Second Party, or his assigns.

"In Witness Whereof, the parties hereto have set their hands and affixed their seals this March 24th, 1947, binding themselves, their heirs or assigns, each copy of the triplicate agreement shall for all purposes be considered an original."

This agreement was signed by Harry J. Murphy as party of the first part and by W. F. Feutz as party of the second part. When Feutz associated Courtney and Mundy in this venture and they contributed a portion of the $40,000.00 capital required, an interest in the above contract was assigned to them in proportion to the capital advanced by each. This assignment was in writing and endorsed on the contract.

By written agreement signed by each of the plaintiffs, Feutz agreed to protect Mundy and Courtney "from any loss arising out of the advancement of the said $25,000.00, plus the profits to be realized from the resale of said twenty-one combines up to an additional $15,625.00, which is the amount of profit to be realized out of this transaction by said second parties. It is understood by the parties hereto that said first party (Feutz) may obtain a surety bond from some bonding company for his protection covering the entire amount of $40,000.00 \* \* \*."

At the time Feutz and Murphy entered into the contract of March 24, 1947, Feutz advanced $15,000.00 in reliance on a bond of Maryland Casualty Company and this was the bond referred to in the contract between Murphy and Feutz as further protection "to be used by said party or his assigns if any part of his interest in this agreement is assigned to someone else." Thereafter at the request of Murphy, the Maryland Casualty bond was delivered up for cancellation and the bond in question was executed in lieu thereof and in exchange therefor. This bond reads in part as follows: "We, Harry J. Murphy, of Tarkio, Missouri, as principal, and the Massachusetts Bonding and Insurance Company, of Boston, Massachusetts, as Surety, bind ourselves to pay W. F. Feutz, of St. Louis County, Missouri, hereinafter called the 'Obligee,' such direct loss not exceeding Sixty-five Thousand & No/100 ($65,000.00) Dollars as the Obligee shall have sustained of money or other personal property belonging to the Obligee, or for which the Obligee is responsible, by any act

or acts of Fraud, Dishonesty, Forgery, Theft, Larceny or Embezzlement on the part of the Principal directly or through connivance while in the performance of joint Adventurers Agreement dated March 24, 1947, which provides that the Obligee shall furnish Forty Thousand & No/100 Dollars for the Principal to use in purchasing twenty-one combines therein described and that said Principal shall not use any portion of aforedescribed funds for any purposes other than the purchase of said combines, during the period commencing at twelve o'clock noon on the 18th day of March, 1947, and ending with the termination of this suretyship."

When this bond was written the agent of the Surety Company had before him copy of the contract between Murphy and Feutz therein referred to. There was evidence that the bond offered by Murphy was one of the inducements which caused plaintiffs to advance funds for the venture and there was evidence that the agent of the defendant at the time of the execution of the bond in question had knowledge of the terms and conditions of the bond of the Maryland Casualty Company which it was proposing to supersede by the bond in question.

It was the contention of the defendant in the trial court and that contention is renewed here, that liability on the bond was limited to Feutz, he being the only obligee named therein; that he had advanced only $15,000.00 which defendant offered to repay on condition that it be relieved from all alleged liability to the other plaintiffs. On this appeal the controlling issue is whether plaintiffs Courtney and Mundy are within the coverage of the bond. This question was preserved by defendant by its motion for directed verdict at the close of all the testimony and by exceptions saved to certain of the court's instructions.

■ An individual, voluntary or accommodation surety is regarded as a favorite of the law and the rule of strictissimi juris is applicable in the construction of his contract and all doubts will be resolved in his favor. The defendant, however, is a compensated surety and in the construction or interpretation of the contract of such a surety the contract is construed most strongly against the surety and in favor of the indemnity. Such a contract is to be regarded as in the nature of an insurance contract governed by the rules applicable to insurance contracts and if the bond in suit is fairly open to two constructions or interpretations, one of which would uphold and the other defeat the claim of the insured, that interpretation or construction which is most favorable to the insured will be adopted. Union Trust Co. v. Wyatt, Mo., 58 S.W.2d 708; State ex rel. Mills Lbr. Co. v. Trimble, 327 Mo. 899, 39 S.W. 2d 355; Union State Bank v. American Surety Co., 324 Mo. 438, 23 S.W.2d 1038; Grand Lodge v. Massachusetts Bonding & Ins. Co., 324 Mo. 938, 25 S.W.2d 783; Noonan v. Independence Indemnity Co., 328 Mo. 706, 41 S.W.2d 162; Camdenton Consol. School Dist. v. New York Casualty Co., 340 Mo. 1070, 104 S.W.2d 319; Hartford Accident & Indemnity Co. v. Federal Bond and Mortgage Co., 8 Cir., 59 F.2d 950.

■ It is argued that this bond is simply a fidelity bond. It guaranteed the honesty of Murphy while "in the performance of joint Adventurers Agreement dated March 24, 1947." It was, we think, both a fidelity and a performance bond, at least to the extent that it guaranteed that Murphy would undertake the performance of the agreement with honesty and fidelity.

■ The court in its instructions gave consideration to the written contract of March 24, 1947, in construing the bond, and this is strongly relied upon as error. The bond was confessedly written as a surety or guaranty for the performance of that contract and the contract is referred to in the bond itself. The contract, being referred to in the bond, may properly, we think, be regarded as a part of the surety contract and hence, may properly be considered in its interpretation. Swinney v. Connecticut Fire Ins. Co., Mo.App., 8 S.W. 2d 1090; Noonan v. Independence Indemnity Co., supra; Peterson v. Miller Rubber Co., 8 Cir., 24 F.2d 59, 62; 9 Appelman, Insurance Law and Practice 70, § 5276. In

the last cited authority it is said, "Where a bond and another contract or instrument relate to and form one and the same transaction, or the bond refers to such other instrument or is conditioned for the performance of specific agreements, set forth therein, such instrument with all its stipulations, limitations or restrictions becomes a part of the bond, and the two should be read together and construed as a whole."

In these circumstances the contract of March 24, 1947, became by reference a part of the bond.

■■ Turning now to the contract, it is to be observed that as a further protection to Feutz, Murphy agreed "to allow the surety bond issued by the Maryland Casualty Company of Baltimore, in the sum of $65,000.00, to be used by said second party, *or his assigns, if any part of his interest in this agreement is assigned to someone else* to cover any losses as specified therein." (Italics supplied.) The bond of the defendant simply replaced this bond and by its terms it made the surety responsible for the period commencing at twelve o'clock noon on the 18th of March, 1947, though the bond was not executed until the 24th of April, 1947. So construed the contract contemplated that Feutz might assign, if he had not already done so, an interest in his contract with Murphy and the assignees of Feutz were clearly within the coverage of the bond. The bond was therefore given not only for Feutz but for his assigns and it is well settled that a third party for whose benefit a contract is made may maintain an action on it in his own name. Farris v. Pitts, 221 Mo.App. 1204, 300 S.W. 840; Bank of Corning v. Consolidated School Dist., 225 Mo.App. 821, 37 S.W.2d 982; United States v. Scott, 8 Cir., 167 F.2d 301.

■ It is urged that there is no ambiguity in the bond and hence recourse can not be had either to other documents or attending circumstances. The contract of March 24, 1947, was so referred to in the bond as to make it a part of the contract. That being true, its terms and conditions must be taken into consideration in determining the intent of the parties as all parts of a con-

tract must be considered together. As said by us in Peterson v. Miller Rubber Company, supra, "A contract may be contained in several instruments. These if made at the same time, in relation to the same subject-matter, may be read together as one instrument, and the recitals in one may be explained or limited by reference to the other. This rule obtains even when the parties are not the same, if the several contracts were known to all the parties and were delivered at the same time to accomplish an agreed purpose."

To the same effect see: Mo. K. & T. Ry. Co. v. American Surety Co., 291 Mo. 92, 236 S.W. 657; Houck v. Frisbee, 66 Mo. App. 16; Noonan v. Independence Indemnity Co., supra; Union State Bank v. American Surety Co., supra; Empire Gas & Fuel Co. v. Stern, 8 Cir., 15 F.2d 323.

■ A mortgage on real estate is usually given as security for a debt. That debt may be evidenced by a promissory note referred to in the mortgage. The mortgage and the note are separate instruments, yet they must be read together in interpreting the intention of the parties and this is so even though the note might be executed by a third party.

We think, however, that the bond standing alone is not free from uncertainties and ambiguities. The trial court in a very exhaustive opinion, D.C., 85 F.Supp. 418, 426, points out some of these ambiguities. The trial court in its opinion inquires:

"Why is coverage under the bond antedated to March 18th? The reference in the bond to contract of March 24th only increases seriousness of the question, when coverage is dated back six days prior to March 24th. What relation does the bond cover during that six day period? Examine every word in every sentence in the bond and the question remains unanswered. We go to the facts and circumstances surrounding execution of the bond. The Surety's agent had two instruments before him at that time—Murphy's letter ordering the bond, and contract of March 24th. Murphy's letter is silent on the subject. The March 24th contract gives us the same information Surety's agent had and gives a

simple and plausible explanation for the March 18 date. It was date of the Maryland bond and Surety's agent was thereby writing his bond to duplicate coverage time of the Maryland bond. The conclusion is inescapable that the exact sentence from which Surety's agent got his information that the Maryland bond was dated March 18th also gave him actual notice the Maryland bond was believed by Feutz to cover 'his (Feutz') assigns' of an interest in the March 24th contract. Surety proceeded to write the bond and mail it to Murphy without restrictions with reference to any assigned interest. * * *

"Why was the bond written for $65,000.-00, when the money to be furnished was $40,000.00? This excess cost Murphy $250.00 in premiums. As Murphy was only getting $40,000.00 under the March 24th contract, some substantial reason must exist for this expenditure of $250.00 by Murphy. The bond itself sheds no light on the subject. Reference to the March 24th contract gives a full explanation. Again it was to duplicate the coverage of the Maryland bond in amount. Again that information comes from one sentence in the contract of March 24th * * *.

"* * * Why was the provision placed in the bond that the defendant would be liable for 'such direct loss' as Feutz might sustain 'in money' 'belonging' to Feutz, as obligee 'or for which' Feutz 'is responsible.'[?]"

There was therefore no error in denying defendant's motion for a directed verdict. Neither was there any error in the court's instructions to the jury, nor in the refusal of the instructions requested by defendant.

As has been observed the court dismissed the action as to the third party defendant, Maryland Casualty Company, and this is urged as error. In its opinion the trial court, referring to this contention, says, "We dismissed the case of the Surety against Maryland, based on co-suretyship, because there was no evidence Maryland ever had knowledge of the March 24th contract which was covered by Surety's bond. The oral agreement leading to the written contract between Feutz and Murphy all took place subsequent to execution and delivery of Maryland's bond. Co-suretyship, like any other contract, must have a basis in intent and understanding of the parties. It does not exist here as between Surety and Maryland."

We are in entire accord with the views expressed by the trial court on this question and think the dismissal of the action as to the third party defendant was not erroneous.

Plaintiffs have submitted a motion for award of damages pursuant to Rule 21(b) of this court, on the ground that it appears that the appeal was taken merely for delay. The rule provides that, "In any case where an appeal has delayed proceedings on a judgment appealed from and shall appear to have been taken merely for delay, damages, not exceeding 10 per cent of the amount of the judgment, in addition to interest, may be awarded and added to the judgment."

It has been held that fidelity and indemnity bonds of a compensated surety and contracts of insurance permit statutory damages and attorney fees to be recovered where the refusal of the surety to pay is without reasonable or probable cause. Camdenton Consol. School Dist. v. New York Casualty Co., supra. Plaintiffs requested the trial court to submit this question to the jury. This, however, the court declined to do and plaintiffs have taken no cross-appeal and the ruling of the trial court on that question is not before us for review. This limits our consideration to the question as to whether or not the appeal was taken merely for delay. We are of the view that the contentions of the defendant on this appeal are wholly without merit. The case was tried with great care. Defendant was given an opportunity to present every conceivable defense, both during the trial and on its motion for judgment notwithstanding the verdict. In deciding that motion against defendant the trial court carefully prepared and filed an elaborate opinion, covering every contention of defendant that was presented in the trial court and likewise every contention presented by the defendant on this appeal. In view of the scope and searching character of that opinion, the questions presented to this court

on defendant's appeal could scarcely be said to be debatable. The appeal may be attributable to the zeal of counsel but the plaintiffs should not be required to bear the expense resulting from the excessive zeal of opposing counsel. Under the rule this court may award damages not exceeding ten per cent of the judgment. The judgment in this case is a large one and we think the assessment of damages in the amount of ten per cent of the judgment would be excessive, but we assess damages for the delay occasioned by the appeal in the sum of $2230.00, with directions to the Clerk of this court to enter award of damages accordingly. May Department Stores Co. v. Reynolds, 8 Cir., 140 F.2d 799; Occidental Life Ins. Co. v. Eiler, 8 Cir., 125 F.2d 229.

The judgment appealed from is affirmed.